THE BOARD OF COMMISSIONERS OF MORRIS COUNTY, *et al.,*
*v.* ANDREW W. HINCHMAN.

TOWNSHIP BONDS *for Court House; Illegal Issue; Estoppel.* Where a township, after a proposition had been submitted to the voters thereof at a special election held in the township on the 28th of January, 1873 — upon the supposition that the act of March 2, 1872, gave authority therefor — issued fifteen bonds, each of the sum of one thousand dollars, toward the construction of a court house for the county in which the township is situated, to be erected on a court-house site within the township, and the bonds were sold for ninety cents on the dollar in the city of New York, and the proceeds thereof used exclusively in the construction of the court house, in accordance with the proposition submitted to the voters of the township, and afterward, on September 25, 1876, an action was brought in the United States circuit court for the district of Kansas, by the owner of coupons upon eleven of the bonds against the township, and judgment was rendered thereon against the township, and no appeal was taken, and the judgment was afterward paid and taxes were thereafter levied to meet the interest on the bonds to 1881, *held,* that thereafter the township could not question the validity of the bonds. *Held, also,* That a citizen of the township who had moved therein in the fall of 1873, and had regularly paid his taxes every year on the real estate owned by him in the township, including the taxes levied to meet the interest on the bonds, until 1881, is also estopped from questioning the validity of the bonds or denying that they were legally authorized and issued. *Held, further,* That even if the bonds were illegally voted by the township, or issued without full compliance with the provisions of the law, as the land-owner, under the circumstances, could not question their authorization or issuance, he is not entitled to an injunction to prevent the township from levying and collecting a tax upon his real estate to pay the interest and provide a sinking fund for the bonds, although a portion of his real estate was, after the issuance of the bonds, detached by a change of boundary lines from the township issuing them.

*Error from Morris District Court.*

ACTION brought on December 19, 1882, by *Andrew W. Hinchman* against *The Board of Commissioners of the County of Morris; A. Moser, Jr.,* clerk, and W. H. White, treasurer of said county; Council Grove township, in Morris county, and J. J. Jones, trustee thereof, to enjoin and restrain the defendants and their successors in office from levying and col-

lecting or attempting to levy and collect any tax upon the real estate of the plaintiff in Valley township, in said county, to pay the interest and provide a sinking fund upon certain bonds issued by Council Grove township, March 1, 1873; also, for a judgment and decree declaring that said bonds were void as to the plaintiff, and not a lien on his property. A temporary order of injunction was obtained on December 19, 1881, restraining and enjoining the defendants from making said levy or collecting said tax; on January 25, 1882, an amended petition was filed by the plaintiff, setting forth additional and supplemental averments; on April 26, 1882, Council Grove township, and J. J. Jones, as trustee, filed a cross-petition and answer to the amended petition; on May 4, 1882, the plaintiff filed a reply to the cross-bill and answer; on April 20, 1883, the board of commissioners of Morris county filed a disclaimer to the petition.

Trial at the April Term, 1883. The court, from the admissions of the parties, the allegations of the pleadings, and the evidence, found the following facts, viz.:

"1. Said Morris county was duly organized prior to the year 1860.

"2. On March 17, 1860, the board of county commissioners of said county duly organized and formed said Council Grove township, embracing the following lands and none other, viz.: 'Council Grove township shall be composed of townships Nos. 16 and 17 S., of ranges 7 and 8 E., and parts of townships Nos. 16 and 17 S., of range No. 9 E.; and bounded as follows: On the south and east by the county line; on the north by a line dividing townships Nos. 15 and 16 S.; and on the west by the range line dividing ranges Nos. 6 and 7, east of the sixth principal meridian.'

"3. At the time mentioned in finding No. 2, March 17, 1860, a two-mile strip containing sections 1, 2, 11, 12, 13, 14, 23, 24, 25, 26, 35, and 36, in townships 16 and 17 S., of range 9 E., were a part of Breckinridge (now Lyon) county, and that thereafter, by chapter 22, Laws of 1864, the two-mile strip above described was taken from said Breckinridge county and added to said Morris county.

"4. Said board of county commissioners made no formal change in the east boundary line of said Council Grove

township by any resolution or order defining boundaries, from March 17, 1860, until April 15, 1874, when they formed and organized Valley township, a proper description of which is set out as 'Exhibit A' to plaintiff's petition. But as an assumed modification of this finding the defendant showed the following proceedings, of record in the office of said county clerk, as the action of the board of county commissioners at a meeting duly held January 13, 1874.

"The following petition of Wm. H. Martin, Wm. H. Hubbard, Patrick O'Donnell, and thirty-four others, was taken up:

'To the Hon. Board of County Commissioners of Morris County, Kas.: We, the undersigned citizens and legal voters of Morris county, residents within the following-described territory, most respectfully petition and pray your honorable board to establish a voting precinct, to be bounded as follows: Commencing at the west boundary line on section 24, township 16, range 8, between lots 2 and 3; thence on a direct line south to the township line between townships 16 and 17; thence west on said township line to the east line of Elm Creek township; thence south on said line to the south boundary line of Morris county; thence east on the said boundary line to the east boundary line of Morris county; thence north on said boundary line to section 24, township 16, range 9, between lots 1 and 4; thence due west on said line to point of beginning; said precinct to embrace all of the Kaw diminished reserve land except that part lying west of sections 24, 25, and 36, in township 16, range 8. For all of which, we, your petitioners, will ever pray.'

"On motion, the petition was granted, and the voting precinct ordered established as prayed for, said precinct to be known by the name of Kaw Land precinct, Council Grove township, and the place for holding the first election to be at the Agency.

"5. This plaintiff was at the time of the commencement of this suit, and now is, the owner of the real estate described in his petition herein, and so much as is in said sections 11 and 35, lies in said two-mile strip and all in said Valley township, and said section 34 was in Council Grove township as organized in 1860.

"6. On January 8, 1873, and not before, there was presented to the township board of said Council Grove township, in words and figures, the following:

'COUNCIL GROVE, MORRIS COUNTY, KANSAS,⎫
                               January 8, 1873.  ⎰

'To the Hon. Trustee of Council Grove Township: We, the undersigned, citizens and tax-payers of said township, do most respectfully petition your honorable body to submit a proposition to vote the sum of fifteen thousand dollars in bonds towards the construction of a court house for Morris county, to be erected on the court-house site in the city of Council Grove, Morris county, Kansas.'

Which said petition was signed by thirty-eight persons and no more, three only of whom in what is now Valley township, but neither of them on the said two-mile strip; but said plaintiff did not sign said petition.

"7. The said election to vote for said bonds was held on January 28, 1873, and the only notice thereof was given by the publication in a weekly newspaper on January 11th, 18th, and 25th, 1873.

"8. Said bonds were issued March 1, 1873, fifteen in number, each in the sum of $1,000, and numbered from one to fifteen inclusive, a perfect printed copy of which, with coupons attached, is set out and attached to the answer of Council Grove township, filed herein April 26, 1882.

"9. The officers issuing such bonds did not make registration thereof in a book kept for that purpose specially, but did register them in the book kept by the township trustee for the general purposes of his office. The township had no special book for registering bonds.

"10. Said bonds were never delivered to the treasurer of state to be held in escrow, but were sold immediately after, March 15, 1873, in the city of New York, for ninety cents on the dollar, and the proceeds thereof were used exclusively in the building of said court house.

"11. Said bonds were duly registered by the auditor of state, March 15, 1873.

"12. Said court house was built on lots owned by said Morris county prior to January 6, 1873, and ever since so owned by said Morris county.

"13. Said plaintiff did not vote on the proposition to issue said bonds, on January 28, 1873.

"14. At said election for said bonds there were cast 144 votes for and three votes against such bonds, and in said vote eleven (11) persons voted on said proposition who resided in what is now Valley township, but none of them resided on the said two-mile strip except Geo. W. See.

"15. Said plaintiff moved into Morris county in 1873, and the only time he ever voted at Council Grove was at the general election in November, 1873, and he then resided on the said two-mile strip, and voted at Council Grove township polls.

"16. Said plaintiff has regularly paid his taxes every year subsequent to 1873, including the tax levied to meet the interest on these bonds, including the tax on his real es-

tate above described, until he brought this suit to enjoin the collection of such particular tax levied for 1881.

"17. The two-mile strip, so far as it had any connection with the subject-matter of this suit, was a strip two miles east and west by twelve miles north and south, and previous to the year 1873 the United States had only permitted settlers upon the north three miles thereof, which said three miles did not embrace any of the plaintiff's land; and between the years 1864 and 1874 there were comparatively few people on any of said two-mile strip.

"18. Prior to the creation of Kaw Land precinct, mentioned in finding No. 4, the city of Council Grove was the only place where anyone living in what is now Council Grove and Valley townships could vote.

"19. From 1864 to 1874, it was popularly understood by all the folks in Morris county that said two-mile strip was a part of Council Grove township, and such fact was neither considered nor questioned, and so soon as any of the property thereon became taxable, the taxing officers of Council Grove township assessed it for taxation, and collected such taxes; and one man, not this plaintiff, living on said two-mile strip, was once elected justice of the peace of said Council Grove township, but never qualified. From the time the two-mile strip was added to Morris county, in 1864, for a period of ten years and up to the time Valley township was organized, in 1874, the inhabitants of the two-mile strip considered themselves in every respect as citizens of Council Grove township, and generally voted at the elections in said township and acted as judges of said election, and participated in the township government and in nominating the officers of said township, and took part in all township political meetings, and paid township taxes, and claimed to be citizens of said township of Council Grove; and neither said strip nor the inhabitants thereof were claimed to belong to or to be a part of any other township except Council Grove township, and their being citizens of Council Grove township during the entire period of ten years was never questioned until this suit was commenced. The following numbers of votes were cast at the following-named elections at said city of Council Grove, by parties residing on said two-mile strip, to wit: November, 1864, 2 votes; November, 1865, 4 votes; March, 1864, Story Sargent, 1 vote; March, 1865, Story Sargent, 1 vote; April, 1869, 12 votes; April, 1872, 5 votes; August, 1872, special election, 4 votes; November, 1872, 16 votes; November, 1873,

21 votes; April, 1874, 5 votes; January 28, 1874, coal-bond proposition, 3 votes. The poll books of the township for 1866, 1867, 1868, 1870, and 1871, could not be found.

"20. At said general election in November, 1872, there were cast 348 votes.

"21. A suit was brought in the United States circuit court for the district of Kansas, on September 25, 1876, by the Bank of Lima against said Council Grove township, on' coupons of eleven of the fifteen bonds in question, and the petition filed therein had attached thereto, as a part thereof, a copy of said bond and all the coupons attached, and being a perfect duplicate of the printed bond attached to defendants' answer herein. A demurrer was filed to said petition by said Council Grove township on October 18, 1876, which demurrer was, on June 12, 1877, overruled; and said Council Grove township failing to answer, judgment was rendered by said court on said coupons and never appealed from, but paid."

As conclusions of law, based upon the above and foregoing facts, the court found that—

"1. The above facts, so far as the plaintiff in this suit is concerned, never made the said two-mile strip in question a part of Council Grove township prior to the issuance of said bonds.

"2. Said proceedings in the United States circuit court are not *res adjudicata* as to this plaintiff.

"3. Said bonds were not legally authorized and issued, and this plaintiff is in no wise estopped from asserting such to be the case.

"4. In the issuance of said bonds the township of Council Grove exceeded its authority.

"5. Because of the foregoing facts and the issues joined herein, and the conclusions of law herein, this plaintiff is entitled to a perpetual injunction as prayed for, both as to the land in said two-mile strip and the other land in Valley township."

The following is a copy of the bond referred to in the eighth finding:

"BOND OF COUNCIL GROVE TOWNSHIP, COUNTY OF MOR-
RIS, STATE OF KANSAS.

"Know all men by these presents, that the township of Council Grove, in the county of Morris and state of Kan-

sas, is indebted to J. W. Simcock, or bearer, in the sum of one thousand dollars, payable on the first day of March, 1888, at the office of Northup & Chick, in the city of New York, with interest thereon at the rate of ten per cent. per annum, payable annually on the presentation of the coupons hereto attached.

"This bond is issued for the purpose of paying a donation of said Council Grove township to the county of Morris for the purpose of building a court house in said county of Morris, and in pursuance of an act of the legislature of the state of Kansas, entitled 'An act to authorize counties, incorporated cities and municipal townships, to issue bonds for the purpose of building bridges, aiding in the construction of railroads, water power, or other works of internal improvement, and providing for the registration of such bonds, the registration of other bonds, and the repealing of all laws in conflict therewith,' approved March 2, 1872, and by authority given to the trustee of said township of Council Grove by reason of a majority of the legal voters of said township voting in favor of a proposition, duly and legally submitted to said voters at a special election held in said township for that purpose, on the 28th of January, 1873."

Upon the findings of fact the court adjudged that the tax in question was illegal; that the injunction heretofore granted be perpetual; and the defendants, and each of them, and their successors in office, be perpetually enjoined from levying upon or assessing against the land of the plaintiff any tax whatsoever to pay the interest or principal of the bonds referred to in the plaintiff's petition; and also adjudged that the plaintiff recover of Council Grove township his costs. The township excepted, and brings the case here.

*Johnston & Bertram,* and *John T. Bradley,* for Council Grove township, plaintiff in error.

*Buck & Feighan,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Various objections are presented to the bonds set forth in the petition. Some of these objections are to the effect that they are absolutely void because the town-

ship had no authority to issue them, and that their infirmities appear upon their face; others, that if not void, they are at least voidable. An examination of the record convinces us, however, that the plaintiff below is in no condition to claim equitable relief. It appears, among other things, from the findings of the trial court, that the bonds of the township, to the amount of $15,000, were issued March 1st, 1873; that they were sold in the city of New York for ninety cents on the dollar; that the proceeds thereof were used exclusively in the construction of a court house for Morris. county on the court-house site in the city of Council Grove, in accordance with the petition presented to the trustee of the township for the submission of the proposition to vote said bonds; that on September 25, 1876, an action was brought in the United States circuit court for the district of Kansas by the Bank of Lima against Council Grove township, upon the coupons of eleven of the fifteen bonds; that on October 18, 1876, a demurrer was interposed by the township to the petition; that this demurrer was overruled by the court on June 12, 1877, and the township failing to answer, judgment was rendered against it upon the coupons; that no appeal was taken therefrom; that the judgment was afterward paid; that the plaintiff moved into Morris county in 1873; that he voted at the general election in 1873 in the township; that he regularly paid taxes every year subsequent to 1873 on his real estate described in the petition, including the taxes levied to meet the interest on these bonds, until he brought this action to enjoin the collection of the tax of 1881.

After the judgment of the Bank of Lima was rendered against the township, the plaintiff paid his portion of the taxes to liquidate the same, and he continued to pay his taxes for interest and to provide a sinking fund upon all the bonds, up to 1881. It is a well-established rule in equity that if a party is guilty of *laches* or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief. Under this rule it was decided that an injunction will not be granted to restrain the payment of

money illegally voted by a town, if the petitioners have been guilty of gross *laches* and knowingly have permitted others to incur liability in good faith, relying upon such appropriation for reimbursement. ( *Tash v. Adams,* 64 Mass. 252.)

Again, where aid is given to railroads under enabling acts, and bonds are issued in exchange for stock, or the bonds are sold and stock purchased which is retained by the municipality; or even where there is a donation of the bonds, and interest is paid for a number of years, the municipalities are concluded as to any irregularities in the issue. ( *Johnson v. Stark County,* 24 Ill. 690; *Keithsburg v. Frick,* 34 id. 421; *Commonwealth v. Pittsburgh,* 43 Pa. St. 391; *Steines v. Franklin County,* 48 Mo. 167; *Bradley v. Franklin County,* 65 id. 638; *Burr v. City of Carbondale,* 76 Ill. 455.)

Further, it is held that if a judgment is obtained against a county or its legal representatives in a matter of general interest, as the assessment or collection of a tax, it is binding upon all the citizens individually as well as upon the county or its officers named as parties on the record. ( *Clark v. Wolf,* 29 Iowa, 197.) If this is so, then by the action of the federal court against Council Grove township, all the citizens of that township are concluded. This includes all citizens within the township and those upon the territory of which the township was composed at the voting and issuance of the bonds. (Ch. 142, Laws of 1873.) Therefore the plaintiff below is estopped from now contesting the validity of the bonds. Clearly, the township cannot relitigate the validity of the coupons or bonds set forth in the action lately pending in the federal court. If the prior judgment renders the township liable for the bonds, that judgment can have no validity or force unless the citizens are bound thereby, because the township has no power to provide moneys for the payment of the bonds outside of the collection of taxes upon the property of the township embraced therein at the time the bonds were issued. If any tax-payer may restrain the collection of the

47 — 31 KAS.

taxes levied to pay the bonds, by an action against the township or its officers, the township is without power to pay the interest on the bonds, or provide a sinking fund to pay the bonds.

Counsel insist that even if the bonds are valid as against Council Grove township and all of its citizens, that the detached territory—Valley township—is not liable; that ch. 142, Laws of 1873, applies only to bonds "legally authorized and issued." Plaintiff moved into Council Grove township in November, 1873, and that township must be treated as the plaintiff's agent or representative so far as these bonds are concerned. Valley township, as an organization, had never anything to do with the issuance of the bonds. If Council Grove township cannot question the validity of the bonds, the plaintiff cannot question their validity. Therefore neither Council Grove township nor the plaintiff can be heard at this time to say the bonds were not "legally authorized and issued." As to Council Grove township and the plaintiff the bonds have been "legally authorized and issued," and their validity cannot now be contested.

It is also insisted that a portion of Valley township—a two-mile strip—was never in Council Grove township, and that so much of the real estate of plaintiff below as is situated in sections 11 and 35, lies in the two-mile strip, and therefore that this part of the real estate described in the petition was not in Council Grove township at the time the bonds were voted or issued. (*Chandler v. Reynolds,* 19 Kas. 249.) From 1864 to the time that Valley township was organized, in 1874, the two-mile strip was not only a part of Morris county, but was everywhere recognized and acknowledged as a part of Council Grove township. It was not only so recognized and acknowledged by its own residents, but it was so recognized and acknowledged by the citizens and officers of Council Grove township, and also by the officials of Morris county, including the board of commissioners of that county. This was never questioned until this action was commenced. Therefore, although the county commissioners of Morris

county never actually made a formal order changing the east boundary line of Council Grove township, so as to embrace said two-mile strip, it was to all intents and purposes a part of the township at the time the bonds were voted and issued. (*School District v. The State,* 29 Kas. 57.)

The judgment of the district court must be reversed, and the case remanded with direction to the district court to enter judgment upon the findings of fact dissolving the temporary injunction heretofore granted in the case.

All the Justices concurring.