THE STATE OF KANSAS v. THE BOARD OF COUNTY COMMISSIONERS OF SCOTT COUNTY.

No. 10754.

| 58 | 491 |
|----|-----|
| 61 | 391 |
| 58 | 491 |
| 63 | 875 |

1. SCHOOL-FUND COMMISSIONERS — *making purchase in violation of statute as to total indebtedness, bonds nevertheless valid against municipality.* The statutory provision that the Commissioners for the Management and Investment of the State School Funds "shall not invest in any bonds which, together with the other outstanding indebtedness, shall exceed ten per cent. of the assessed valuation of said municipal corporation," is a binding requirement on those officers which cannot be safely ignored; but if the Commissioners, consciously or unconsciously, violate this provision, and purchase municipal bonds in excess of the limitation, the municipality will not be relieved from the payment of the bonds so purchased.

2. COUNTY REFUNDING BONDS — *based on recorded proceedings apparently regular, interest paid several years, county cannot, against innocent holder, show bonds issued outside county.* County commissioners have no authority to convene as a board away from the county seat and beyond the limits of the county to compromise and refund the county indebtedness; but where they do so, and refunding bonds are issued in good faith to pay off a valid indebtedness, which is canceled and surrendered; and subsequently an entry is made in the journal, of the proceedings of the board, which indicates that the meeting was held at the county seat and that all the proceedings were regular; and where the bonds are subsequently purchased by the State, an innocent purchaser, and the board of county commissioners thereafter, and for a number of years, levies and collects taxes for the payment of interest upon the refunding bonds, and actually pays the same to the State, thereby recognizing and ratifying its invalid action in issuing the bonds beyond the limits of the county; *held,* that the irregularity and invalidity are thereby cured, and the county is estopped from denying its liability upon such bonds.

3. ——— *may be issued to refund judgments. Riley v. Garfield Township,* ante, p. 299, followed.

Error from Scott District Court. Hon. J. E. Andrews, Judge.   Opinion filed July 10, 1897.   *Reversed.*

*L. C. Boyle*, Attorney General, for the State.

*J. C. Starr*, County Attorney, *J. F. Pancake*, *S. S. Ashbaugh* and *Travis Morse*, for defendant in error.

JOHNSTON, J.   This was an action to recover interest claimed to be due upon refunding bonds alleged to have been issued by the Board of County Commissioners of Scott County, and which were purchased by the State as an investment of the permanent school fund.

In August, 1887, the Board of County Commissioners of Scott County issued $120,000 of bonds in aid of the construction of two railroads :—$80,000 for the C. K. & N. railroad, and $40,000 for the D. M. & A. railroad.   The bonds had previously been authorized by a vote of the electors of the county, the railroads had been built, and the bonds were issued and exchanged for equal amounts of the capital stock of the companies, in pursuance of law and in compliance with the conditions of the contract between the companies and the county.   After a number of years, the county failed to pay the interest accruing upon the bonds, and two different actions to recover the defaulted interest were brought in the Circuit Court of the United States for the District of Kansas by the holders of the bonds.   In one of these, judgment was rendered against the county, on January 11, 1892, for $11,745.41 ; and, upon the same day, judgment was taken against the county, in the other case, for $21,479.20.

Soon afterward, negotiations looking toward the refunding of the entire debt were begun, and, in March, 1892, after a number of public meetings of

the electors of the county, participated in by the members of the Board of County Commissioners, an agreement was reached and a compromise effected. The amount of the debt was somewhat reduced, and refunding bonds, signed by the chairman of the Board of County Commissioners and the county clerk, were issued to the holders of the original indebtedness. It appears that the bonds were actually executed and delivered in the city of Topeka, in the county of Shawnee, instead of in Scott City, the county seat of Scott County. For the convenience of all the parties, the members of the Board of County Commissioners went to Topeka, at the expense of those to whom the refunding bonds were delivered, and the execution and delivery of the bonds were there completed and the old indebtedness surrendered for cancellation. Upon his return to the county, the county clerk entered upon the journal an order of the Board authorizing the compromise and refunding of the debt, and also an order confirming and approving the reported issue of the bonds by the chairman of the Board and the county clerk. These orders show that the meetings were regularly held at the county seat in Scott County, and that all the steps were legally taken. Subsequently, the School Fund Commissioners purchased the refunding bonds, in several installments. One purchase was made on June 13, 1892, another on July 19, 1892, another on August 4, 1892, and the final purchase was made on June 5, 1893. For several years taxes, were assessed by the Board of County Commissioners, levied and collected, for the purpose of paying the interest upon these bonds; but default was made in the interest accruing in 1895, and no payment was thereafter made. On December 28, 1895, the present action was brought. The county resists payment, and defends upon the grounds that

the bonds were issued without authority, and that they are not valid obligations of the county. The District Court took that view of the case and gave judgment in favor of the county.

The indebtedness was refunded in pursuance of the provisions of chapter 50, Laws of 1879, as amended by chapter 163, Laws of 1891. The question of issuing refunding bonds was never submitted to a vote of the electors, and it is earnestly contended that a vote is indispensable, and that the refunding bonds in suit are therefore invalid. This question and some others closely related to it, which have been argued by counsel for the county, have been decided, adversely to his contention, in the recent case of *Riley v. Garfield Township*, ante, p. 299.

One objection urged against the right of the State to recover upon the refunding bonds is, that the School Fund Commissioners transgressed the statutory restriction in purchasing them. In paragraph 6654 of the General Statutes of 1889, where authority is given to the Commissioners to invest the school funds in municipal securities, there is a provision that they "shall not invest in any bonds, which together with the other outstanding indebtedness, shall exceed ten per cent. of the assessed valuation of said municipal corporation." It appears that the bonds issued exceeded that limitation. This restriction, however, relates to the duties of the Commissioners in investing the school funds, and not to the power of the municipalities to issue bonds. It is a safeguard against investing in doubtful securities, and a prohibition which the Commissioners cannot safely ignore. The Legislature intended that no bonds should be purchased except from municipalities which were in good financial condition and which were abundantly able to meet the obligations

1. Bonds valid against municipality.

when they became due.  It was clearly not intended
that, if the Commissioners purchased a bond of less
value than that directed by the statute, the state
school fund should, for that reason, lose the entire
amount invested in such bond.  The failure of the
Commissioners to exercise that degree of care which
the statute requires, did not destroy the validity of the
bonds, nor will it prevent the State from enforcing the
payment of the bonds purchased.

A more serious question arises upon the admit-
ted fact that the bonds were executed and delivered
away from the county seat and outside of the county.
The Constitution provides for establishing county
seats, and the statute requires that the meetings of
county commissioners for the transaction of county ·
business shall be held at the county seat.  In fact,
every county officer is required to keep his office at
the seat of justice of his county.  Const., Art. 9, §1;
Gen. Stat. 1889, ¶ ¶ 1623, 1672, 1877.  County com-
missioners are officers of the county, and they cannot
convene as a board, or exercise the pow-
2. County cannot, ers conferred upon the board, outside
against innocent
holder, show    the territorial limits of the county.  In-
bonds issued
outside county. deed, the order authorizing the compro-
mise of the debt and the issue of refunding bonds
could only be made when the commissioners were con-
vened as a board in the court house at Scott City.
*Comm'rs of Marion Co. v. Barker*, 25 Kan. 258;
*Comm'rs of Hamilton Co. v. Webb*, 47 id. 104.  It fol-
lows that the Board had no jurisdiction to transact
county business at Topeka; and the action there taken
was clearly irregular and invalid.  While the orders
made and steps taken by the commissioners at Topeka
were without authority of law, we think that the
Board has since that time recognized their action as
legal, and has ratified and confirmed the steps taken

by them in refunding the debt. Their action in this respect was open and above board; and that the debt had been compromised and refunded by them, and the old indebtedness surrendered and canceled, was well understood by the taxpayers and people of the county. In going to Topeka to execute the bonds and exchange them for the old indebtedness, the commissioners were actuated by considerations of convenience only.

When they returned to the county seat, the clerk entered at length upon the journal the order previously made authorizing the compromise and the refunding of the debt and the order approving the execution and delivery of the bonds in exchange for the old indebtedness. The orders have remained in the journal, which was kept under the Board's supervision, and must now be deemed to have been entered and recorded with its sanction and approval. No effort was made to prove that fraud was contemplated or committed, nor that the commissioners had acted clandestinely or secretly in issuing the bonds. On the other hand, the proof shows that the bonds were issued in accordance with the desire of most of the people of Scott County. The refunding of the debt, a portion of which was then in judgments, had been under serious consideration by the commissioners and the people of the county for months prior to the time when the bonds were issued. Public meetings of the electors and taxpayers were called at which this question was openly considered. Propositions from the creditors were received and discussed at these meetings, and the action there taken was reported to, and published in, the local newspapers. Finally, a proposition was made which was favorably received; and, at a largely attended public meeting, a resolution was adopted, with practical unanimity, instructing

the County Commissioners, who were present, to accept the proposition and proceed to compromise and refund the debt upon the basis upon which the compromise was subsequently carried out. There was no concealment of the fact that the bonds had been issued at Topeka, and, as we have seen, a full record of the compromise and refunding was made immediately after the commissioners returned. Every thing was open and fair; and the only irregularity is, that the action was taken away from the county seat. Upon its face, the record which the commissioners made and kept in their journal indicated absolute regularity and validity. The bonds which they executed were in the form of ordinary commercial securities, contained the usual recitals, and appeared to be regularly issued. The State purchased them without knowledge of any irregularity, and is in the position of an innocent purchaser, whatever that may be worth. The judgments funded had been satisfied and the old indebtedness surrendered and canceled. More than this, the Board of County Commissioners has, since the irregular issue of the bonds, given them its official sanction. For a series of years, the commissioners met as a board and levied taxes for the payment of the interest accruing upon the refunding bonds. The taxes were assessed, levied, and collected in the usual way, and the amount thus obtained was paid to the State in discharge of this indebtedness. This was a complete recognition of the validity of the bonds, and an official ratification which cured the irregularity. There was ample authority in the Board, in the first instance, to issue the bonds, and it is a general rule, applicable to municipalities as well as individuals, that, where there is power originally to do a particular thing, there is power to ratify and make valid an attempted effort to do such thing,

32—58 KAN.

however defectively it may have been done in the first instance. *State v. Comm'rs of Pawnee Co.*, 12 Kan. 439 ; *Sullivan v. School Dist.*, 39 id. 347 ; *Waterworks Co. v. City of Columbus*, 46 id. 677, and cases cited. See, also, *Supervisors v. Schenck*, 5 Wall. ( U. S.) 772 ; *Borough of Freeport v. Marks*, 59 Pa. St. 253 ; *Burr v. Chariton Co.*, 2 McCrary ( U. S.) 603 ; 15 Am. & Eng. Encyc. of Law, 1254.

The Board could not have chosen a more effective way of confirming and ratifying its irregular action, nor can a case be conceived where the doctrine of ratification is more justly applicable than in this. The Board made and maintained a record of its proceedings which invited confidence and would leave no doubt in the mind of a purchaser of the validity of the bonds. For a number of years after the issue was made, the Board acted as if its authority had been regularly exercised and the bonds valid. Instead of rescinding or attempting to rescind its action, it has repeatedly acknowledged the validity of the debt, and has availed itself of the benefits derived from the issuance and sale of the refunding bonds. The County has been relieved from the burdens of the old indebtedness, which was confessedly legal, and yet, notwithstanding this, it seeks to have the new bonds declared invalid, and thus escape liability entirely. Having recognized the validity of the bonds, retained and availed itself of the benefits of the compromise and refunding of the old indebtedness, levied and collected taxes and paid the interest upon the refunding bonds for a number of years, the County is not in a position to raise the question of irregularity in the issue, nor to contest the validity of the bonds, as against the State, which is an innocent purchaser and *bona fide* holder of the same. *Comm'rs of Morris Co. v. Hinchman*, 31 Kan. 737 ; *Brown v. City of Atchison*, 39 id. 37 ; *Brown v. Milliken*,

42 id. 769; *Johnson v. Stark*, 24 Ill. 75; *Keithsburg v. Frick*, 34 id. 421.

There is no force in the point that judgments cannot be refunded, as the statute expressly authorizes a county to "compromise and refund its matured and maturing indebtedness of every kind and description whatsoever." Laws 1879, ch. 50; *Riley v. Garfield Township*, supra.

None of the objections urged against the validity of the bonds can be sustained; and therefore the judgment of the District Court will be reversed and the cause remanded for further proceedings.

Allen, J., concurring.   Doster, C. J., not sitting.