No. 28,772.

GEORGE GETTY et al., *Appellees*, v. THE CITY OF SYRACUSE et al., *Appellants*.

(281 Pac. 883.)

Opinion filed November 9, 1929.

*Samuel Yaggy*, city attorney, and *Fred J. Evans*, of Garden City, for the appellants.

*George Getty*, of Syracuse, *C. E. Vance, C. R. Hope* and *A. M. Fleming*, all of Garden City, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs, property owners in the city of Syracuse, commenced this action against the city and its officers to enjoin them from issuing bonds or other obligations of the city to pay for the pavement of streets and intersections of streets in the city, and from paying out of the funds of the city any sum whatever on account of grading and paving that had been done, and from levying taxes to pay bonds that might be issued to pay for the paving. Judgment was rendered in favor of the plaintiffs as asked in their petition. The defendants appeal.

The trial court filed an opinion in which it recited the facts disclosed by the evidence and which amounted to a finding of facts. That opinion states the facts necessary to be considered on the determination of this appeal as clearly as can be done by this court, and, so far as material, was as follows:

"This is an action brought by certain property owners of Syracuse to enjoin the city and its mayor and councilmen from issuing bonds or other obligations of the city to pay for the paving and grading of portions of certain streets and certain street intersections of the city.

"The initial step in the proceedings which resulted in this lawsuit was the enactment of ordinance No. 192 by the governing body of the city on November 14, 1927, which ordinance became effective on November 17, 1927, by pub-

lication in the official city paper. This ordinance provided for the paving of the intersections in question, and shortly thereafter the intersections were paved. At the time of the passage of ordinance No. 192 no portion of the streets forming the intersections had been paved and no preliminary proceeding had been taken by either the city authorities or the owners of the property along such streets to have the same paved.

"Subsequently, on January 12, 1928, a petition was presented to the city's governing body asking that the portions of the streets involved in this action be graded, paved and otherwise improved. The governing body held the petition sufficient and instructed the consulting engineer to prepare plans and specifications for the proposed improvement, and authorized the mayor and city clerk to enter into a contract with one M. R. Amerman to do the work at the price already contracted for previous work.

"On January 16, 1928, this action was filed against the city, its mayor and councilmen, and summonses were served on the defendants on that same day.

"On January 19, 1928, ordinance No. 197 was published and became effective. This ordinance authorized the grading and paving of the portions of Avenue A and Main street described in the petition of the property owners filed with the governing body of the city on January 12, 1928, the same being the streets described in the petition of the plaintiffs in this action.

"Work was begun at once and the paving of the three blocks in question was completed March 21, 1928, most of the work being done in the months of January and February. Warrants in payment of the work were issued from time to time as the work progressed.

"Subsequently, on the 15th day of February, 1928, the governing body of the city passed a resolution declaring it to be necessary to grade, excavate, pave and otherwise improve certain streets and avenues in the city, which resolution was published in the official city paper on February 17, 1928. The streets and avenues designated in said resolution included the same intersections as were designated in the property owners' petition filed January 12, 1928, and which are concerned in this lawsuit, as well as two additional blocks.

"No protest or remonstrance by the resident owners of more than one-half of the property subject to taxation for the payment of the cost of the proposed improvement having been filed, on March 29, 1928, the governing body of the city passed ordinance No. 220, authorizing the mayor and city clerk to enter into the necessary contract for the construction of the improvements. The contract was duly executed on March 29, 1928. The work covered by the contract and by these new proceedings was already completed, as shown by the evidence, and no new work was done after the filing of the final estimates under the original proceedings, and no work was ever actually done under these new and subsequent proceedings.

"In regular sequence thereafter appraisement and valuation was made of the property liable for the expense of the improvements, new estimates apportioning the cost to be borne by the city and to be borne by the properties were filed by the engineer, and on April 18, 1928, the assessment ordinances, No. 231 and No. 232, were passed by the governing body of the city, becoming effective by publication in the official city paper on April 20, 1928. On May ——, 1928, ordinance No. 238 was passed, which ordinance on publication in

the official city paper abandoned and repudiated the original proceedings under which the work was originally begun.

"The warrants issued during the progress of the work under the original proceedings were canceled and new warrants dated subsequent to the initiation of the new proceedings were issued.

"The subsequent proceedings, beginning with the resolution of necessity of February 17, 1928, are admittedly regular in form."

The judgment of the court was as follows:

"It is therefore considered, ordered, adjudged and decreed that said defendants and each of them be and they are hereby perpetually restrained and enjoined from issuing any bonds, warrants or other obligations of the city of Syracuse to pay for the paving described in the plaintiffs' petition or any part thereof; and from paying from the funds of said city to M. R. Amerman or any other person any sum or sums of money whatever on account of the grading and paving described in said petition, and that said defendants be and they are hereby further restrained and enjoined from levying any tax, general or special, against the real or personal property of these defendants in the city of Syracuse, for the purpose of paying for such grading and paving or paying any warrants or other evidence of indebtedness which have been issued in payment therefor."

The city had authority to make the improvements. They were made and were accepted by the city. It now has them and is using them. They cannot be returned. It is not attempting to avoid payment for them. Taxpayers are seeking to enjoin the city from making such payments. The city attempted but failed to comply with the statutory requirements in making the improvements. The city cannot avoid paying for what it has received and keeps. (*Brown v. City of Atchison,* 39 Kan. 37, 17 Pac. 465; *Sullivan v. School District,* 39 Kan. 347, 18 Pac. 287; *City of Ellsworth v. Rossiter,* 46 Kan. 237, 26 Pac. 674; *Comm'rs of Hamilton Co. v. Webb,* 47 Kan. 104, 27 Pac. 825; *School District v. Sullivan,* 48 Kan. 624, 29 Pac. 1141; *Furniture Co. v. School District,* 50 Kan. 727, 32 Pac. 368; *Mound City v. Snoddy,* 53 Kan. 126, 35 Pac. 1112; *Hovey v. Comm'rs of Wyandotte Co.,* 56 Kan. 577, 581, 44 Pac. 17; *State v. Scott Co.,* 58 Kan. 491, 497, 49 Pac. 663; *Watkins v. School District,* 85 Kan. 760, 764, 118 Pac. 1069; *Ritchie v. City of Wichita,* 99 Kan. 663, 163 Pac. 176; *Parrick v. School District,* 100 Kan. 569, 164 Pac. 1172; *Citizens State Bank v. School District,* 124 Kan. 300, 303, 259 Pac. 796; and *DuBois v. City of Galena,* 128 Kan. 253, 276 Pac. 802.)

Payment for the improvements must be made in the manner provided by law.

Section 12-601 of the Revised Statutes reads:

"Whenever any street or avenue in any city shall be graded, regraded, paved, repaved, curbed, recurbed, guttered, reguttered, macadamized, remacadamized, or otherwise improved, the cost of such improvement shall be paid by and assessed to the property on each side of said street or avenue to the middle of the block."

Part of section 12-602 reads:

"The cost of grading, regrading, paving, repaving, curbing, recurbing, guttering, reguttering, macadamizing, remacadamizing, or otherwise improving intersections of streets and the cost of making any of said improvements in streets, avenues and alleys running along or through city property shall be paid for by the city at large, for which general improvement bonds of the city may be issued according to law. The governing body may in its discretion levy the entire tax or special assessment for such cost at one time, or may provide for the payment thereof by installments, and for such installments may issue bonds as provided by law."

The opinion of the trial court recites that the subsequent proceedings by which the governing body of the city attempted to correct the irregularities that had been made in the first proceedings were admittedly regular in form. It is contended that the city did not have authority to make such corrections.

Section 1 of chapter 147 of the Laws of 1927 reads:

"That in case the mayor and council of any city of the third class shall have heretofore levied or shall hereafter levy any special assessment for any public improvement in said city, which special assessments are or may be informal, illegal, irregular or void for the want of sufficient authority to make or levy the same, or for any cause whatsoever, the mayor and council of such city may at any time relevy any such special assessments in the manner provided and against the property liable for assessment for such improvement at the time of the making thereof: *Provided,* That in all cases where informal, illegal, irregular or void special assessments levied for any improvement against any lot or piece of land shall have been paid, in whole or in part, such lot or piece of land shall not be reassessed for the assessment or the part thereof so paid."

That statute applies to future acts of the city as well as to past ones. Cities and other public corporations have heretofore acted under similar statutes. In *Kansas City v. Schwartzberg,* 78 Kan. 402, 96 Pac. 485, this court declared that—

"A judgment enjoining a city from making a special assessment for an improvement on account of irregularities in the proceedings did not prevent the city from relevying the assessment by proper proceedings." (Syl.)

That case was decided under section 129 of chapter 122 of the Laws of 1903, which, so far as material to the present controversy, is substantially the same as section 1 of chapter 147 of the Laws of

1927. Other cases involving the same principle are *Hines et al. v. City of Leavenworth et al.,* 3 Kan. 186; *State, ex rel., v. Comm'rs of Pawnee Co.,* 12 Kan. 426; *City of Emporia v. Norton,* 13 Kan. 569; *Mason v. Spencer, County Clerk,* 35 Kan. 512, 11 Pac. 402; *Newman v. City of Emporia,* 41 Kan. 583, 21 Pac. 593; *Manley v. Emlen,* 46 Kan. 655, 27 Pac. 844; *Waterworks Co. v. City of Columbus,* 46 Kan. 666, 677, 26 Pac. 1046; *Kansas City v. Silver,* 74 Kan. 851, 85 Pac. 805; *Haggart v. Kansas City,* 77 Kan. 798, 94 Pac. 789; *Shepherd v. Kansas City,* 81 Kan. 369, 374, 105 Pac. 531; *State, ex rel., v. Eberhardt,* 85 Kan. 433, 116 Pac. 611; and *Mason v. Kansas City,* 103 Kan. 275, 278, 173 Pac. 535.

The judgment is reversed, and the trial court is directed to enter judgment for the defendants.