No. 34,714

The Beeler & Campbell Supply Company, *Appellant*, v. E. A. Warren, A. S. Hopkins, Hugh Edward Hale, The Citizens Gas Company and The Ozark Pipe Line Company, *Appellees*, and The Ozark Pipe Line Company, *Cross-appellant.*

(100 P. 2d 700)

Opinion filed April 6, 1940.

*Elmer W. Columbia,* of Parsons, and *Chester Stevens,* of Independence, for the appellant.

*LeRoy Bradfield, Ora D. McClellan,* both of Neodesha, and *Stuart T. McAlister,* of Parsons, for the appellees.

The opinion of the court was delivered by

THIELE, J.: The present appeal and cross-appeal arise from rulings on motions to dismiss the plaintiff's action, the essential question being the corporate status of the plaintiff.

Without attempting any complete statement, the petition may be summarized thus: Plaintiff is a corporation organized under the laws of the state of Kansas; that about September 18, 1933, the defendant, the Ozark Pipe Line Company, was indebted to it in the sum of $5,000; that defendant, the Citizens Gas Company, was engaged in the distribution of gas which it received from the Ozark Pipe Line Company; that about September 18, 1933, all of the stockholders of the two defendant companies entered into a written contract with defendants Warren, Hopkins and Hale whereby the three individual defendants purchased all of the stock of the two corporate defendants, in which contract provision was made for the payment of $5,000 to the plaintiff on the debt due to it. Refusal to pay was alleged, and prayer was for recovery. Without going into detail, certain of the defendants demurred to the petition and from an adverse ruling appealed to this court, which sustained the rulings of the trial court (*Beeler & Campbell Supply Co. v. Warren*, 149 Kan. 135, 86 P. 2d 482). Thereafter and on February 27, 1939, each of the corporate defendants and the individual defendants collectively filed separate, but substantially identical, motions to dismiss the action for the reasons that on December 31, 1932, the charter board of the state of Kansas forfeited the charter of plaintiff for its failure to file its annual statement and pay its annual fee, as shown by the certificate of the secretary of state attached to the motion; that the plaintiff had made no application to the charter board for reinstatement of its charter; that the plaintiff was dissolved and its charter forfeited long before the filing of the action, and at the time of the filing plaintiff had no legal existence as a corporation or otherwise and had no legal right to maintain the action.

On April 19, 1939, the plaintiff filed its answer to the several motions in which it showed that on March 22, 1939, the plaintiff had made application for reinstatement, restoration and renewal of its charter; that it filed its annual reports for the years 1931 to 1938, both inclusive, and had paid its license fees and all other fees in connection therewith, and that the secretary of state had duly issued his certificate to the effect the corporation was in good standing.

.Copies of various receipts and certificates were attached as exhibits. Particular reference was made by quotation from it to G. S. 1935, 17-244, and it was alleged that plaintiff corporation had been fully restored to all of its rights the same as if its articles of incorporation had never become inoperative, etc., and it prayed the motions to dismiss be denied and the cause heard on its merits.

After consideration, the trial court sustained the motions to dismiss of all defendants except the Ozark Pipe Line Company, its motion being denied. The plaintiff appeals from the rulings adverse to it, and the Ozark Pipe Line Company appeals from the ruling adverse to it.

Confining our attention now to plaintiff's appeal, it may be said the correctness of the trial court's ruling depends on whether a corporation, whose charter was forfeited in 1932 because of its failure to file its annual report and pay its annual fees for the year 1931, may in 1939, by virtue of Laws 1935, ch. 123, now appearing as G. S. 1935, 17-239 to 17-246, inclusive, by filing the required certificate and paying the requisite taxes, dues, fees and penalties, be reinstated so that its rights and liabilities shall be as though its articles of incorporation had at all times remained in full force and effect. Plaintiff contends that it may, and that the trial court erred in holding otherwise. The appellees contend that the above act is not available to the appellant in that at the time the act became effective the appellant corporation was legally and completely dead and without any right to restoration; that the above act is prospective in operation, not retrospective, and that plaintiff is not within its terms, and that in any event plaintiff cannot be reinstated under it because its charter was forfeited not only for failure to pay fees, but for failure to file annual reports, and under the terms of the act reinstatement can only be had where the articles of incorporation became inoperative for nonpayment of taxes, dues or fees, or other causes not pertinent here, and that by its terms the act shall not be construed as permitting reinstatement of a corporation ousted for reasons other than those specified; in other words, that where a corporation is ousted for failure to file annual reports, it may not be reinstated.

Before discussing the particular act and its effect, it may be observed that plaintiff was a domestic corporation for profit and under statutes then in force and now appearing in the General Statutes of 1935, it was required on or before March 31 of a particular year to

make its annual report to the secretary of state showing its condition of business on the preceding December 31 in such form as might be prescribed by the secretary of state, and containing information as set forth in the statute, and at the time of filing its annual report to pay annual fees as set forth by the statute, the amount in any particular case being determined from the information disclosed by the annual report (G. S. 1935, 17-701). If any corporation required to file the report and pay the fees prescribed by the above act failed or neglected to do so, as required, it was subject to penalty under G. S. 1935, 17-705, although the penalties might be remitted under G. S. 1935, 17-707. No action under these two sections seems to have been taken. Under G. S. 1935, 17-706, provision was made for actions by the attorney general to collect annual fees. This section further provides that—

"The failure of any domestic corporation to file the annual statement and to pay the annual fee herein provided for within ninety days of the time for filing and paying the same shall, in addition to other penalties, work the forfeiture of the charter of such corporation organized under the laws of this state and the charter board may at any time thereafter declare the charter of such corporation forfeited," etc.

Although the certificate of the secretary of state attached to the motions to dismiss states the charter had been forfeited in accordance with R. S. 17-701, it is evident the forfeiture was had under R. S. 17-706 (same as G. S. 1935, 17-706), for failure to comply with R. S. 17-701 (same as G. S. 1935, 17-701, above referred to), otherwise there was no forfeiture.

Because of its relation to the statutes relied upon by plaintiff as conferring its right to reinstatement, we notice that in 1931 the legislature enacted Laws 1931, ch. 139. The title of that act required "certain corporations" to file annual reports and to pay filing fees, without further specification as to what those certain corporations were. Section 1 of the act limited the operation of that section to domestic and foreign corporations "not organized and operated for pecuniary profit." Section 4 stated "That if any corporation fails or refuses to file the annual report and pay the filing fee as herein provided," etc., it could upon compliance with certain requirements be reinstated. This act subsequently appeared as R. S. 1933 Supp. 17-701a, 17-701b, 17-701c and 17-710. The Metropolitan Building Company was a domestic corporation organized for profit, defaulted in the payment of its fees for 1932 and 1933

and its charter was forfeited December 31, 1933. The attorney general brought a suit to wind up its affairs. The company then commenced an original action in mandamus to compel the state charter board to reinstate its charter, which that board defended on the ground there was no statutory authority for it so to do. Without going into any details, this court held that the 1931 act applied only to corporations not organized for profit, and that the company was not entitled to the relief sought (*Metropolitan Bldg. Co. v. Ryan*, 141 Kan. 521, 41 P. 2d 1002). That decision was rendered on March 9, 1935. Although the opinion does not so state, the record shows the forfeiture was not only for failure to pay fees but also for failure to file annual reports. At the time the above action was brought, during its pendency and when the decision was rendered, the legislature was in session, and passed three certain acts. By chapter 126, approved February 11, 1935, it legalized the charters of corporations whose charters had been reinstated by the state charter board without authority of law, and by chapter 125, approved March 13, 1935, it repealed R. S. 1933 Supp. 17-701a, heretofore mentioned. By chapter 123, approved March 2, 1935, it enacted the particular provisions under which the plaintiff contends it was reinstated and restored to all of its corporate rights.

Included in appellee's counter abstract is a copy of a memorandum filed by the trial court at the time it ruled on the motions to dismiss. That court was of opinion the statutes under which the plaintiff sought reinstatement were prospective in operation and applied only to corporations whose charters were forfeited after the passage of the act, and appellees so contend here.

The act in question is entitled as one relating to corporations, providing for the renewal, extension and restoration of articles of incorporation, and repealing certain existing laws. It contains ten sections, but we are presently concerned only with the first section. If it precludes reinstatement of the present plaintiff as a corporation, the trial court's ruling was correct; if it does not and plaintiff could avail itself of the act, then consequences provided in later portions of the act would follow. Section 1 reads as follows:

"Any domestic corporation, (*a*) whose articles provide for a limited duration of its existence, may at any time, before or after the expiration of such limited duration, or (*b*) whose articles of incorporation have become inoperative by law for nonpayment of taxes, dues or fees, or (*c*) whose corporate existence has expired by reason of failure to renew the articles of incorporation, or (*d*) whose articles of incorporation have been renewed, but, through

failure to comply strictly with the provisions of law, the validity of whose renewal has been brought into question, may at any time procure an extension, restoration, renewal or revival of its corporate existence, together with all the rights, franchises, privileges and immunities and subject to all of its duties, debts and liabilities which have been secured or imposed by its articles of incorporation, by filing with the secretary of state a certificate of its last acting president and secretary or treasurer, or other officers to be elected as hereinafter provided, duly signed and sworn or affirmed to by such officers: *Provided, however,* That this act shall not be construed as permitting the reinstatement of the charter of any corporation ousted for reasons other than are specified above," etc. (G. S. 1935, 17-239.)

It is to be observed that the statute makes four classifications of condition of corporations which may be reinstated, and that insofar as verb forms are concerned, in (*b*) "articles . . . *have become* inoperative"; in (*c*) "corporate existence *has expired*"; and in (*d*) "articles of incorporation *have been* renewed," is the language used. The use of the present perfect tense indicated the legislature had in mind a condition existing at the time of the passage of the act and not one that might arise in the future.

Appellee directs our attention to the rule with respect to retrospective operation of a statute set out in *Douglas County v. Woodward,* 73 Kan. 238, 84 Pac. 1028, syl. ¶ 1, that—

"Generally, a statute will be construed as applying to conditions that may arise in the future. An act will not be given a retrospective operation unless the intention of the legislature that it shall so operate is unequivocally expressed." (Syl. ¶ 1.)

The question of retrospective operation of statutes was treated at some length in *International Mortgage Co. v. Henry,* 139 Kan. 154, 30 P. 2d 311, where the Woodward case, *supra,* other of our decisions and authorities generally were reviewed, and what was said there need not be repeated. In that case we were dealing with a statute which it was contended had the effect of placing a statutory or double liability on stockholders of a corporation when there was no such provision at the time they became stockholders. There vested rights were involved and the question was whether the new legislation attempted to create a new and additional burden in respect to a past transaction. It was there held:

"As a general rule of statutory construction an act will not be given retrospective force and effect unless the intention of the legislature that it shall so operate is unequivocally expressed, and the presumption is against retroactive intention unless it is clearly expressed." (Syl. ¶ 2.)

In the above case the effect of curative legislation was not involved and was not considered. The question of the nature and effect of curative legislation has been treated in many authorities and decisions.

In 16 C. J. S., p. 875 (Constitutional Law, §.422), it is said:

"In general, where there is no constitutional prohibition, a legislature may, by retrospective statute, cure mere irregularities in prior proceedings which do not extend to matters of jurisdiction; and ordinarily it may ratify and validate any past act which it could originally have authorized, provided it still has the power to authorize it and its authorization does not impair vested rights. Common expressions of the rule are to the effect that the legislature may validate retrospectively any proceeding which it might have authorized in advance, or may cure by subsequent statute what it might have dispensed with altogether. So, statutes curing defects in acts done, or authorizing or confirming the exercise of powers, are valid where the legislature originally had authority to confer the powers or authorize the acts."

In 11 Am. Jur., pp. 1208, 1209 (Constitutional Law, § 379), is the following:

"A curative statute is necessarily retrospective in character and may be enacted to cure or validate errors or irregularities in legal or administrative proceedings, except such as are jurisdictional or affect substantive rights, and also to cure or to give effect to contracts between parties which might otherwise be invalid for failure to comply with technical legal requirements. . . . Although a retrospective statute, affecting and changing vested rights, is very generally considered in this country as founded on unconstitutional principles and consequently inoperative and void, this doctrine does not apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights and only go to confirm rights already existing, and in furtherance of the remedy, by curing defects, add to the means of enforcing existing obligations."

And see, also, 12 Am. Jur., p. 76 (Constitutional Law, § 436).

In *Mason v. Spencer, County Clerk*, 35 Kan. 512, 11 Pac. 402, this court held:

"Where an irregularity rendering an act of a city or subordinate agency illegal or void is simply a failure to comply with some provision of the statutes, the compliance with which the legislature might in advance have dispensed with, the legislature can, by a general curative statute subsequently passed, dispense with such compliance and thereby render the act of the city or subordinate agency legal and valid." (Syl. ¶ 2.)

And that principle has been followed in later decisions. (See *Mason v. Kansas City*, 103 Kan. 275, 277, 173 Pac. 535; *Pollock v. Kansas City*, 87 Kan. 205, 123 Pac. 985, and *Getty v. City of Syracuse*, 129 Kan. 106, 281 Pac. 883, and cases cited.)

Corporations are the creatures of the legislature, which had the power to require annual reports and annual fees, and either to increase or decrease the requirements. If it saw fit to permit reinstatement of corporations whose charters had lapsed, it had power to do so, at least so long as vested rights of third persons were not affected. Even though it be said the act now under discussion was retrospective in operation, we think that from its terms it clearly appears it was intended to affect corporations whose status was fixed at the time the act was passed, as well as those thereafter having that status; that it clearly appears to have been curative legislation, and that the passage of the act was a lawful exercise of the legislative power.

The trial court also sustained the appellee's contention that because the charter of the plaintiff corporation had been forfeited not only for failure to pay fees, but also for failure to file its annual report, there could be no reinstatement under the statute; that the statute, under clause (b), refers to corporations "whose articles of incorporation have become inoperative by law for nonpayment of taxes, dues or fees," while the proviso is, the act "shall not be construed as permitting the reinstatement of the charter of any corporation ousted for reasons other than are specified above." The two clauses may be said to be somewhat ambiguous when taken together. It is possible to read them and to conclude that although the charter may have been forfeited for nonpayment of fees, if there was another and concurrent reason not mentioned in the act, then under the proviso there could be no reinstatement. And it is also possible to read the act and conclude that any corporation whose charter was forfeited for such nonpayment of fees, might have reinstatement if that ground existed although the forfeiture may also have been based on other concurrent grounds not mentioned, provided that if the corporation's charter had not been forfeited on at least one ground of the four classes mentioned in the act, then there could be no reinstatement.

Reference has heretofore been made to G. S. 1935, 17-701, providing for filing the annual report and paying the annual fee, and to other statutes prescribing consequences following such failure. It would be possible for a corporation to file its annual report and to fail to pay its annual fee, but it could not pay its annual fee until it had filed the report, for the fee is determined upon information disclosed by the report. G. S. 1935, 17-703, provides that "upon

the filing of the report and the payment of the fee," the secretary of state shall issue his certificate of compliance. G. S. 1935, 17-705, provides penalties in case a corporation "required to file the report and pay the fee" shall fail or neglect to do so within the period prescribed. G. S. 1935, 17-706, provides that "The failure of any domestic corporation to file the annual statement and to pay the annual fee" within ninety days of the time provided, shall, in addition to other penalties, work a forfeiture of its charter. It is to be observed that the legislature used a copulative and not a correlative conjunction. While there may be instances where the word "and" should be read "or," it is difficult for present purposes to do so. And that the legislature must have been considering that filing of a report was a condition precedent to the payment of fees is evident from Laws 1935, ch. 123, for in addition to other requirements, the corporation seeking to revive its articles of incorporation "shall pay all franchise taxes, dues, fees and penalties thereon due to the state of Kansas . . . which it would by law have been liable to pay. if its said articles of incorporation had not expired." (Sec. 5.) Those fees would be determinable from reports which should have been filed annually.

We conclude that under the statutes under consideration a corporation whose articles of incorporation became inoperative for nonpayment of its annual fee, may have restoration, renewal and revival of its corporate existence upon compliance with the statutory requirements, even though its charter had been forfeited not only for failure to pay its annual fees, but also because it failed to file its annual report.

We have not overlooked the appellant's contention that the charter having been restored and revived only the state may question its validity, but it is not necessary that we discuss it.

Our conclusion also makes it unnecessary that we discuss the cross-appeal of the Ozark Pipe Line Company, and the question of waiver and estoppel presented in connection with both appeals.

The judgment of the trial court sustaining the motions to dismiss of the defendants Warren, Hopkins and Hale and of the Citizens Gas Company is reversed, and its judgment denying the motion to dismiss of the Ozark Pipe Line Company is affirmed.