No. 35,136

THE MILTONVALE RURAL HIGH SCHOOL, No. 1, in CLOUD and OTTAWA COUNTIES, *Appellee*, v. THE CLAY COUNTY COMMUNITY HIGH SCHOOL et al., *Appellants*.

(113 P. 2d 1095)

Opinion filed June 7, 1941.

*C. Vincent Jones* and *Wayne W. Ryan*, both of Clay Center, for the appellants.

*Charles L. Hunt* and *Frank C. Baldwin*, both of Concordia, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by a rural high-school district to recover tuition from a community high-school district, the principal question being the force and validity of the so-called statute for equalization of tuition. The trial court held the statute to be valid, and the rate of tuition under it to be three dollars per week per pupil, as more fully later detailed.

The facts of the case were stipulated in the trial court and for our purposes are summarized as follows: At all times involved plaintiff was a duly organized rural high-school district maintaining a high school with a four-year course accredited by the state board of education at Miltonvale, in Cloud county, Kansas. Although not stipulated, from statements made in the briefs it appears the district lay wholly within Cloud and Ottawa counties. The defendant district was originally organized under the county high-school law (Laws 1886, ch. 147; G. S. 1935, ch. 72, art. 26) and became a community high-school district by virtue of Laws 1923, chapter 187, now appearing as G. S. 1935, chapter 72, article 25. Its present territory includes all of Clay county not included in some other high-

school district. The defendant district maintains a duly accredited four-year high school. There was never any agreement concerning payment of tuition, and whatever obligation there is arises under the law. During the school year 1936-1937, eight pupils, residents of the community high-school district, having complied with preliminary statutory requirements, attended the rural high school for fixed periods and during the following year three such pupils attended. At the proper time the rural high-school district presented to the community high-school district verified vouchers for the tuition which it claimed to be due. Plaintiff claimed it should be paid at the rate of three dollars per week for the time each of the above students attended its school, while defendant contended the rate should be two dollars per week, and it tendered that amount, which plaintiff refused. The amount to be received at whatever was determined to be the correct rate was stipulated. Neither county has a Barnes high school (G. S. 1935, ch. 72, art. 30), but Cloud county is a so-called tuition county (G. S. 1935, ch. 72, art. 38) and Clay county is not. Long before the students mentioned attended the rural high school, that school had fixed the rate for nonresident students at three dollars per week and had at all times maintained such rate. The question submitted to the trial court was whether the proper rate applicable was three dollars or two dollars per week.

The cause was submitted to the trial court upon the stipulation as to the facts and upon written briefs as to the law, and therefrom the trial court concluded the proper rate was three dollars per week and rendered judgment in favor of the plaintiff district. In due time the defendant district perfected its appeal, presenting, in substance, two questions: Can the tuition provisions of the community high-school law (G. S. 1935, 72-2505), the tuition provisions of the rural high-school law (G. S. 1935, 72-3513) and the provisions of the so-called equalization statute (G. S. 1935, 72-3804, 72-3805) be harmonized, and second, if they cannot be harmonized, is the last law unconstitutional?

The first question presented compels a review of the above-mentioned tuition provisions, and in discussing the second question it may be of assistance to consider other statutes dealing with tuition due on account of attendance by pupils who are nonresidents of a particular district.

We notice briefly the first statute dealing with tuition of nonresident high-school pupils. By Laws 1886, ch. 147, provision was

made for the establishment of county high schools. Under section 13 of that act, provision was made for the admission of nonresident pupils "upon the payment of such tuition as the board of trustees may prescribe." The section mentioned has never been changed, the act has never been specifically repealed, and as it has been amended in particulars now appears as G. S. 1935, 72-2601 to 72-2617, inclusive.

Laws 1923, chapter 187, is an act disorganizing county high schools, creating community high schools and providing for the payment of tuition. It provides extensive machinery for conduct and operation of community high schools and, by section 5, that upon compliance with certain procedure, resident pupils may attend a high school outside the boundaries of the community high school and its board of trustees shall pay tuition at the rate of two dollars per week, and also that nonresident pupils may attend the community high school, the rate being fixed at two dollars per week, the details pertaining to source of payment not being here of moment. It is specifically provided that the provisions relating to tuition shall apply to pupils attending high schools in adjoining counties. This act, as amended, now appears as G. S. 1935, 72-2501 to 72-2505, inclusive, and G. S. 1939 Supp., chapter 72, article 25. We are advised by the stipulation of facts the defendant district was organized originally under the act of 1886, and continues as a community high-school district under the act of 1923.

By Laws 1915, chapter 311, provision was made for the establishment of rural high-school districts. This act as subsequently amended now appears as G. S. 1935, chapter 72, article 35. Later amendments shown in G. S. 1939 Supp. are not of importance here. By section 10 of the original act—and it has not been changed—the school board may admit nonresident pupils, not to the exclusion of a resident pupil, "on the payment of a tuition fee fixed by the high-school board." We note this act contains no specific provision as to who must pay this tuition nor does it make any provision for its resident pupils attending any other high school. These last matters are not involved in the present action.

Although not directly involved, we notice the tuition provisions of four other acts, one providing for Barnes high schools, the others providing for payment of tuition by certain counties. By Laws 1905, chapter 397, provision was made for so-called Barnes high schools. This act has been amended and supplemented and now ap-

pears as G. S. 1935, chapter 72, article 30. Subsequent amendments appearing in G. S. 1939 Supplement are not here important. Two sections, 72-3013 and 72-3014, last amended in 1923, provide for attendance by nonresident pupils, specifically including pupils from adjacent counties, upon compliance with certain regulations. The rate of tuition fixed is two dollars per week, payable from the general fund of the county where the pupil resided. Laws 1911, chapter 263, provided for aid to high schools in counties having a population less than 10,000. As amended and supplemented, it appears as G. S. 1935, chapter 72, article 31. It makes no specific provision for tuition of nonresident pupils. Laws 1919, chapter 276, subsequently amended and now appearing as G. S. 1935, chapter 72, article 32, is by its terms probably applicable to only one county in the state. It makes no specific provision for tuition of nonresident students.

In 1915 the legislature made provision for free high-school tuition of pupils not residing in a high-school district and covering counties in which provision was not otherwise made. The original act, Laws 1915, chapter 314, has been amended and now appears as G. S. 1935, 72-3801 to 72-3803, inclusive, and G. S. 1939 Supplement, 72-3802. The details of the act are of interest here only in that the pupil may attend the high school nearest his residence in the county of his residence or in an adjoining county, the tuition rate is fixed at three dollars per week, and a tax is levied to create a tuition fund out of which to pay the tuition.

In an appendix to the school laws, as published by the state superintendent, it appears that in 1939 there were twenty-three counties operating under the community high-school law; forty were operating under the Barnes law; one was operating under G. S. 1935, chapter 72, article 31; one was operating under G. S. 1935, chapter 72, article 32, and the remaining forty counties operated as tuition counties. Although a few counties operating under the Barnes law, a few operating under the county tuition law and four under the community high-school law are entirely bounded by other counties of like classification, many others are bounded by counties of one or more of the other classifications. In each county operating under the Barnes law or community high-school law adjacent to a tuition county, or vice versa, the question could and did arise as to the rate of tuition to be paid by nonresident pupils of one attending the high schools of another. The problem generally was further complicated by the fact that rural high schools could be and were established

in. Barnes law counties, in parts of community high-school counties not included in the boundaries of the community high-school district and in tuition counties, and one rural high-school district could and did include within its boundaries lands within two or more counties of different classification. (See *State, ex rel., v. Storey,* 144 Kan. 311, 58 P. 2d 1090, where a rural high-school district was organized with territory in four counties, one of which was a community high-school county.)

Although the factual situation may have been some different in 1927 than at an earlier or later period, in that year the general situation was about the same as above disclosed, and in an effort to clarify the matter of the rate of tuition, the legislature enacted Laws 1927, chapter 275, the title and pertinent portions of which read as follows:

"AN ACT relating to tuition in all the high schools of Kansas, and repealing all acts and parts of acts in conflict herewith.

*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. Tuition shall be free in all high schools in the state of Kansas to pupils having the necessary educational qualifications to enter the same.

"SEC. 2. Whenever under existing laws of the county, high-school district or school district is liable for the payment of the tuition of said pupils, the rate to be paid shall be that prevailing at the high school where said pupils attend.

"SEC. 3. All acts and parts of acts in conflict herewith are hereby repealed."

Sections 1 and 2 of the above act now appear as G. S. 1935, 72-3804 and 72-3805.

Appellant first contends that as applied to the facts of the instant case, the tuition provisions of the rural high-school law, the community high-school law and the so-called equalization statute may all be harmonized, and as harmonized, the rate of two dollars fixed by the community high-school law is the applicable rate. The theory is that the rural high-school law is the older, and was supplanted by the community high-school law which fixed the rate at two dollars and expressly provided that its provisions shall apply to pupils attending high schools in adjoining counties; that the rate being so fixed was the legal rate the rural high school could collect and therefore must be held to be the prevailing rate under the equalization statute. We are in general agreement with the rule that the later of two inconsistent provisions must prevail, and indeed it was applied as between a community high school under the law of 1921 and later provisions of the Barnes law as amended in 1923, in the case of *School District v. Community High School,* 126 Kan. 51,

267 Pac. 23. Application of that rule, however, would require that the equalization law, if valid, be followed. That act provides that where tuition is due "the rate to be paid *shall be that prevailing at the high school where said pupils attend."* (Italics ours.)

The rural high-school district board was empowered to· fix the rate, it was fixed long prior to events complained of; that is where the Clay county students attended and we are of the opinion that it may not be said the prevailing rate is one amount for one group and another amount for another group. Appellant's contention does violence to the plain language of the statute. That statute must prevail unless it is unconstitutional, as contended.

Appellant contends the equalization statute is unconstitutional for two reasons: The first is that it is a special and not a general law and violative of article 2, section 17 of the state constitution. No citation of authority that the act is special is included. Without pursuing the matter, it may be said that under the rule laid down in *Barker v. Kansas City,* 149 Kan. 696, syl. ¶ 1, 88 P. 2d 1071, the contention is not good. The second reason is that the equalization statute is a statute which amends a former statute or statutes, does not contain the entire act or acts amended, nor repeal the amended sections, violates article 2, section 16 of the state constitution and is therefore unconstitutional. Our reports contain many decisions dealing with the question here presented, and a very comprehensive review of them would unduly extend this opinion.

It was early held that in considering constitutionality of a statute, all presumptions are to be in its favor and before the court should declare it invalid, the invalidity must clearly appear. (*State of Kansas, ex rel, v. Robinson* et al., 1 Kan. 17, syl., and *Leavenworth County v. Miller,* 7 Kan. 479, syl. ¶ 8. And see the recent case of *Thompson v. Reno County Comm'rs,* 152 Kan. 610, 613, 106 P. 2d 700.) The review made of the statutes with respect to tuition shows inconsistency in the various acts preceding the enactment of the so-called equalization act, not only as to the amount to be paid, but, if the review had been more extended, the sources from which it was to be paid. In the last act, no effort was made to affect sources of money or to change funds from which the tuition would be paid. Clearly an effort was made to provide that in any one school district, the rate of tuition from nonresident pupils should be the same for each of them, although some might come from one county operating under a law fixing another rate. In order to accomplish that, it

was necessary to specifically amend each statute and repeal the amended statute, or could the legislature pass a general law which would fix such a standard and leave previous laws stand, to have their operation where the situation permitted?

Viewed from appellant's standpoint, a strong case is *Atchison, T. & S. F. Rly. Co. v. Board of Education*, 123 Kan. 378, 255 Pac. 60, which dealt with the rate of taxation as applied to a board of education in a first-class city. For our purposes here, it may be said that in 1907 an act (Laws 1907, ch. 330) had been passed providing a rate of levy not in excess of twenty mills, with a proviso for a different rate where the city had over 38,000 inhabitants. In the same year, a different method of assessment was provided with the result that excess amounts were raised. To remedy the situation, in 1909 the legislature passed an act having a comprehensive general title concerning taxation and limiting rates of levy. Section 22 of the act read, in part:

"The authority of boards of education in cities of the first class to levy taxes as provided in chapter 330, Laws of 1907, is hereby limited so that the board of education of any such city shall not fix a rate of levy for the respective purposes in excess of the following rates:" (Laws 1909, ch. 245, § 22.)

followed by a schedule of rates, changing the population figure and rate thereunder. This act contained no specific repeal of the previous act, but did have a section, which was denominated as nonsensical, that all acts or parts of acts in conflict with it were repealed. Later other acts of similar form were enacted referring to the section of the 1907 act, but of tenor similar to the one quoted above, and if the legislation was valid, the rate levied in a certain year was too high. The railway company tendered payment under the last act, which was refused, then paid under protest and brought an action to recover the alleged unlawful excess. It recovered in the lower court, but on appeal this court held that method of legislation was expressly forbidden by article 2, section 16 of the constitution, it being said:

"If the act of 1909 had contained but a single section consisting of the matter contained in section 22, besides the repealing section it would have been patently invalid. Invalidity was multiplied, not cured, by dealing in wholesale fashion with many statutes whose provisions were changed without compliance with the constitutional requirement. The act was not legislation by reference, because legislation by reference leaves the law referred to unmodified. (*State v. Shawnee County*, 83 Kan. 199, 110 Pac. 92.) The act was not a new, independent superseding act, a code complete in itself, relating to

power of taxing bodies, including boards of education in cities of the first class, to levy taxes. It was not interpretative. It could not operate to repeal the law of 1907 by implication because that law was expressly referred to and modified, and attempt was made to repeal the inconsistent portion. The purpose of the constitutional restriction was 'to prevent uncertainty and confusion which might arise from adding or striking out words and making additions and substitutions without rewriting the section as amended.' (*State v. Pauley,* 83 Kan. 456, 464, 112 Pac. 141.) That purpose was flagrantly disregarded." (p. 382.)

Another case to which our attention is directed is *School Districts v. Stafford County Comm'rs,* 141 Kan. 108, 40 P. 2d 334, it was there contended that Laws 1929, chapter 239, section 2, now appearing as G. S. 1935, 72-3807, was unconstitutional as being in violation of article 2, section 16 of our constitution. The particular act had a title referring generally to tuition of pupils attending school in a county other than that of their residence. The first section of the act, now appearing as G. S. 1935, 72-3806, provided certain regulations to be followed in order that a nonresident student might attend a high school (as to its constitutionality see *Gridley Rural High School District v. Woodson County Comm'rs,* infra). The first part of the second section provided for the rate of tuition, followed by a provision that in Barnes-law counties the county commissioners should pay tuition from the high-school fund of the county. It was this provision which was attacked. We need not review the Barnes law, which provided for payment of the fund to the various school districts entitled. This court held that the effect of the second act was amendment and repeal, that if permitted to stand, it changed the management and control of tuition moneys in Barnes-law counties; that it did not attempt to cover all the matter contained in the earlier statutes and could not be held to repeal any of them by implication, and was unconstitutional. In that case it was recognized the line is not easily drawn as to whether there is amendment and repeal, or independent legislation with resultant repeal by implication. Many of our cases are there reviewed and reference is made thereto.

In *Gridley Rural High School Dist. v. Woodson County Comm'rs,* 150 Kan. 704, 95 P. 2d 972, the question was the constitutionality of section 1 of the act considered in the last case above discussed. The question presented, in part, was whether that section 1 (G. S. 1935, 72-3806) was merely supplementary to certain prior enactments, or whether its terms so modified or amended them as to make them no

longer operative in their entirety.  This court took note that it was plainly the intention of the legislature to establish a uniform procedure for the admission of nonresident pupils, and that it was the legislative intent to supplement previous sections of the statute by a statewide procedure to embrace cross-county line tuition cases, and constitutionality was upheld.

The same question here presented arose in *State, ex rel., v. Rural High-school District*, 126 Kan. 166, 267 Pac. 2, in which validity of the defendant district was challenged by the state.  Prior to 1925, it was possible under existing laws to organize a rural high-school district containing not less than sixteen square miles, upon compliance with the law.  In 1925 an act was passed having a general title, and providing in effect, that no high-school district should be organized unless the aggregate assessed property value was two million dollars.  In 1927 it was attempted to organize the defendant rural high-school district, which concededly did not have an aggregate assessed value of property of two million dollars.  The defendant district sought to meet the state's challenge by contending the act of 1925 was unconstitutional for the reason it was amendatory of the provisions of the previous act or sections amended, etc.  In discussing that contention, it was said:

"It will be observed that the act applies not only to rural high-school districts, but is made applicable to all high-school districts of every kind organized within the state.  In its enlarged scope it would seem to be supplemental legislation as to rural high-school districts. . . The act itself makes no reference to other statutes and does not purport to amend any existing laws. It, like many other separate acts, restricts to some extent the operation of existing statutes, but such modifications do not require the statutes thus modified to be included in the modifying act.  The constitutional provision invoked does not apply in such cases because they are not within the mischief designed to be remedied by it.  At the most the act of 1925 only amends former statutes by implication, and it has been held that the constitutional provision invoked has no application to amendments by implication.  *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781, dealt with the subject of providing for the issuance of special tax bills against property chargeable with the costs of improvements in cities of a certain class.  In earlier acts provision had been made to pay for improvements with bonds, and the language of those earlier acts followed closely parts of the new act.  It was held to be well settled that the constitutional provision has no application to amendments by implication, and proceeded to say:

" 'The act of 1905 in a sense amends various sections of the earlier act, but it does so by implication; it does not cover their entire subject matter, and hence does not supersede them, but merely restricts the field of their opera-

tion; it is a complete and in a sense an independent enactment, which requires no reference to any other statute to make its meaning clear.' (p. 724.)" (p. 169.)

Our attention is directed to other decisions, many of which are referred to in those above mentioned, all of which reiterate the holdings of which those mentioned are illustrative.

Analysis of the so-called tuition law shows that section 1 is merely a restatement of the provision found in practically every high-school law ever enacted in this state. Section 2 does not pretend to disturb in any manner the source from which tuition moneys are to be paid, or to confer any right on any nonresident student to attend any high school. Its sum and substance is that if, under any existing law, any county, high-school district or school district is liable for tuition because pupils resident therein attend another high school as nonresident pupils, the rate of tuition shall be that prevailing at the high school where the pupils attend. The act does not pretend to cover the field of admission of nonresident pupils, does not alter the rates fixed by statute in various cases, but merely provides that at one particular school the rate shall be the same to all legal nonresident students regardless of the type of district from which they may come. There is no specific repeal of any statute, for evidently the legislature did not care to make a uniform rate applicable alike to all types of districts. Notwithstanding section 3 of the act, if there is any repeal whatever it is only partial; the original tuition sections of all the laws still have their field of operation for under them the prevailing rate in any one district may be determined. In our opinion the legislation was supplemental and only indirectly of an amending nature, and does not violate our constitutional provision.

In view of what has been said, it follows that the trial court's decision was correct, and it is affirmed.

HARVEY, J., dissents.