No. 37,066

THE STATE OF KANSAS, ex rel. HARRY E. MILLER, County Attorney of Brown County, *Plaintiff*, v. COMMON SCHOOL DISTRICT No. 87, Brown County, CARL ARGABRIGHT, Director, ROBERT O. BRUNING, Clerk, and ROBERT D. KORTHANKE, Treasurer, *Defendants*.

(186 P. 2d 677)

Opinion filed October 23, 1947.

*Harry E. Miller,* county attorney, argued the cause and was on the briefs for the plaintiff.

*Harold R. Fatzer,* assistant attorney general, argued the cause, and *Edward F. Arn,* attorney general, was with him on the briefs for the defendants.

*Arno Windscheffel,* of Smith Center, *Wm. B. Ryan, Keith G. Sebelius,* both of Norton, *John F. O'Brien,* of Independence, *Paul R. Wunsch,* of Kingman, *Alex Hotchkiss,* of Lyndon, *George Templar, Earle N. Wright,* both of· Arkansas City, *Steadman Ball,* of Atchison, *Harold H. Malone, Paul V. Smith, W. Jay Esco, E. Lael Alkire, Frank T. Malone* and *D. Emmett Foley,* all of Wichita, as *amici curiae.*

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in quo warranto, its essential purpose being to obtain a determination of the validity of statutes later mentioned and which purport to validate the establishment of certain school districts. After the defendants had answered, the plaintiff moved for judgment on the pleadings and the cause was briefed and argued on that motion. Upon consideration of the matter, this court on October 9, 1947, made its order that, judgment should be rendered in favor of defendants and that its written opinion should be filed when it could be prepared.

Stated in a summary way, the petition alleges that pursuant to Laws 1945, chapter 291 (the school reorganization bill) appearing as G. S. 1945 Supp., chapter 72, article 56, the duly appointed reorganization committee of Brown county, following proceedings had under the above act, on December 5, 1946, made its order disorganizing then existing common school districts numbers 18, 35, 61 and 65 in Brown county and purporting to create a new district designated as common school district No. 87, and· filed that order with the county superintendent of Brown county, and caused it to be published and served in time and manner provided by the above statute; that the school patrons and school districts affected by that order did not apply for a rehearing as authorized by the above statute and the order became final on January 18, 1947; that for the purpose of making the final order effective and to comply with

the above statute, the county committee designated a time and place for the election of a school board and duly posted notices thereof and on February 18, 1947, the individual defendants were duly elected and qualified. It is also alleged that at a purported annual meeting of common school district No. 87, held on April 11, 1947, the defendants were reëlected to their respective offices and qualified. Plaintiff then alleges that on June 27, 1947, this court, in an action entitled *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865, held all provisions of the above statute unconstitutional and void, and, in brief, that the acts of the committee, in the attempted disorganization of common school districts numbers 18, 35, 61 and 65 were wholly void as was its purported attempt to create the new common school district No. 87, but notwithstanding, defendants called and held an annual meeting for common school district No. 87 on April 11, 1947, at which meeting the electors of the district attempted to reëlect defendants to their respective offices, to adopt a budget, to employ a teacher, and to provide other necessary functions of the purported district. Plaintiff further alleges that at the 1947 session the legislature enacted bills now appearing as Laws 1947, chapter 375, and Laws 1947, chapter 377, purporting to validate all orders of the county committee which organized a new district, quotation being made of a part of the last statute, and that each statute is unconstitutional, void and of no effect for the reason that said statutes purport to validate acts done and school districts created pursuant to a law which has been declared by this court to be unconstitutional and void. Unconstitutionality of Laws 1947, chapter 377, is further asserted on three other grounds: (1) That the statute contains more than one subject, thus violating article 2, section 16 of the constitution of this state; (2) that the statute amends G. S. 1945 Supp. 72-301 and 72-5616 without containing the sections amended and repealing them, thus violating the last-mentioned section of the constitution; and (3) that section 2 of the statute purports to vest legislative power in the county superintendent and the county reorganization committee, in violation of article 2, section 1 of the state constitution. The prayer is that defendants be compelled to show by what authority they exercise their powers as officers of the district and that they be ousted from usurping purported authority attempted to be conferred upon them by the above mentioned statutes; that purported common school district No. 87 be set aside and dissolved; that com-

mon school districts numbers 18, 35, 61 and 65 be adjudged valid and existing and that Laws 1947, chapter 375, and Laws 1947, chapter 377, be declared unconstitutional and void.

Defendants in their answer do not deny the facts pleaded as outlined above, but do deny the legal conclusions pleaded with respect thereto. They allege that the legislature, under article 2, section 1 of the state constitution, has power and authority to validate matters legislative in character sought to be exercised by Laws 1945, chapter 291, and to establish and make valid school districts created thereunder by orders which became final on or before March 1, 1947, and that the enactment of Laws 1947, chapter 375, and Laws 1947, chapter 377, created new school districts which the legislature is authorized to establish pursuant to article 2, section 1, and article 6, section 2 of the state constitution. Defendants also deny that Laws 1947, chapter 377, is unconstitutional for any of the reasons asserted in the petition. Allegations as to the number of school districts created under G. S. 1945 Supp., chapter 72, article 56, where orders become final on or before March 1, 1947, and which are validated by the 1947 acts, amounts of bonds issued, and such allegations need not be repeated. The prayer of the answer is that the validating acts mentioned be held to be constitutional, and that proceedings complained of be adjudged to be proper and lawful.

In reviewing the pleadings we have not set forth allegations that an actual controversy exists as to the rights of the various parties, nor their requests for a declaratory judgment.

Preliminary to a discussion of the propositions of law involved, it may be said in addition to the briefs filed by plaintiff and defendants, six briefs have been filed by *amici curiae*. In these briefs are citations of many authorities, many of the authorities cited being cumulative in character. For that reason no attempt will be made to refer to many of the decisions and texts mentioned in the briefs.

In presenting his contentions that Laws 1947, chapter 375, and Laws 1947, chapter 377, are invalid, plaintiff states four propositions, which will be treated in the order presented.

## I

It is first contended the above acts are unconstitutional and void for the reason the legislature cannot validate a statute that has been declared unconstitutional. As a preliminary to this contention

plaintiff directs attention to the fact that the creation of a school district is a legislative function, and that may be conceded. See *State, ex rel., v. Hines,* 163 Kan. 300, 302, 182 P. 2d 865, and cases cited. After stating it is settled that the legislature can enact curative statutes and validate errors or irregularities in legal or administrative proceedings except such as are jurisdictional or do not impair vested rights, he quotes substantially what is said in *Beeler & Campbell·Supply Co. v. Warren,* 151 Kan. 755, 100 P. 2d 700, where at page 761 of our reports this court deals at some length with the nature and effect of curative legislation. Reference is made to the statement there contained which will not be repeated.

Plaintiff then says that although cognizant of the above decision, his contention is that the legislature cannot enact a curative act validating a law which has been declared unconstitutional because of unlawful delegation of legislative power, and in support of that contention quotation is made from 6 R. C. L. 321, 11 Am. Jur. 1210, 16 C. J. S. 876, 877 and 878, as well as from certain cases as the same are digested in an annotation appearing in 70 A. L. R. 1436 *et seq.,* on the constitutionality of curative statutes purporting to validate prior unconstitutional statutes or statutes not enacted in the manner prescribed by the constitution. For present purposes it may be conceded that if that is the purpose of the statute, the weight of authority supports the contention. The same annotation however states that if the legislature had the power to authorize the acts in the first instance, it may, in the exercise of that power, subsequently ratify the action taken by its agents. The decisions of this court are in accord with the last statement.

In *Beeler & Campbell Supply Co. v. Warren,* supra, where a review of authorities and some of our decisions was made, it was held:

"Curative statutes are necessarily retrospective in character, and may be enacted by the legislature to validate any proceeding which it might have authorized in advance or have dispensed with altogether, provided such legislation does not impair vested right but only confirms rights already existing.

"Statutes curing defects in acts done, or authorizing and confirming the exercise of powers, by a domestic corporation are valid where the legislature originally had authority to authorize the acts done or to confer the powers exercised, so long as contracts are not impaired or vested rights disturbed thereby." (Syl. ¶¶ 2, 3.)

Other cases not cited in the above decision, but where the same rule was announced or recognized, include *State, ex rel., v. Comm'rs of Pawnee Co.,* 12 Kan. 426; *City of Emporia v. Norton,* 13 Kan.

569; *City of Emporia v. Bates*, 16 Kan. 495; *State, ex rel., v. Stevens, et al.*, 21 Kan. 210; *Sullivan v. School District*, 39 Kan. 347, 18 Pac. 287; *State, ex rel., v. Hamilton*, 40 Kan. 323, 19 Pac. 723; *State, ex rel., v. Robertson*, 41 Kan. 200, 21 Pac. 382; *Newman v. City of Emporia*, 41 Kan. 583, 21 Pac. 593; *State v. Scott Co.*, 58 Kan. 491, 49 Pac. 663; *James v. Haynes*, 79 Kan. 608, 100 Pac. 622; *Cole v. Dorr*, 80 Kan. 251, 101 Pac. 1016, 22 L. R. A., n. s., 534; *Shepherd v. Kansas City*, 81 Kan. 369, 105 Pac. 531; *State v. Pauley*, 83 Kan. 456, 112 Pac. 141; *State, ex rel., v. City of Salina*, 108 Kan. 271, 194 Pac. 931; *Getty v. City of Syracuse*, 129 Kan. 106, 281 Pac. 883; *City of Wichita v. Robb*, 163 Kan. 121, 179 P. 2d 937; *Piper v. Moore*, 163 Kan. 565, 183 P. 2d 965.

We examine the statutes under consideration in view of the rules above stated.

Insofar as Laws 1947, chapter 375 is concerned, we note that in the case before us after the new district No. 87 was created on December 5, 1946, an election of a school board was had on February 18, 1947. The above statute, by its terms, purports to validate only where the election was held after February 28, 1947, and therefore this particular act is not involved under the facts before us.

Insofar as Laws 1947, chapter 377 is concerned, reference to its title and discussion thereof is reserved for later consideration. By reason of the time fixed therein, the provisions of section 1 are not of present importance. On the point for present consideration we are concerned only with that part of section 2 which for our purposes reads as follows:

"That where the county school organization committee of any county . . . has organized a new school district . . . and the order of the county committee . . . became final on or before March 1, 1947, such order organizing such new school district . . . is hereby declared to be operative and effective and validated as of March 1, 1947, even though all preliminary steps necessary to make such order operative and effective were not complied with."

It may be observed the statute last referred to is broader than and covers much of the same matter included in Laws 1947, chapter 375.

In *State, ex rel., v. French*, 111 Kan. 820, 208 Pac. 664, it was held that school districts, like many other municipalities, are purely creatures of the legislature and subject not only to its power to create but its power to modify or dissolve. In *School District v. Board of Education*, 110 Kan. 613, 204 Pac. 758, it was held there are no vested rights in the existence of a school district, and that

the legislature has authority to extend or limit their boundaries, consolidate two or more under one, or to abolish a district altogether. Other authorities to like effect could be cited, but the above are deemed sufficient to show that under the facts pleaded no contracts are impaired nor vested rights disturbed by the legislation under consideration.

Bearing in mind the rule that constitutionality of a statute is presumed, and that if there is any ambiguity in its language, the statute is to be interpreted as constitutional rather than unconstitutional (*Hunt v. Eddy*, 150 Kan. 1, 90 P. 2d 747), we examine the statute under consideration in view of the attack made upon it.

It may be observed that there is no language in the statute susceptible of interpretation that the legislature was attempting to validate any law, particularly the school reorganization law enacted as Laws 1945, chapter 291 (G. S. 1945 Supp., chapter 72, article 56). The validating statute under consideration refers specifically to acts done, as the quotation made shows, and if those acts done resulted in an order organizing a new school district, and the order became final on or before March 1, 1947, that order was declared by the legislature to be operative and effective and validated.

Under the authorities above noted, the legislature could have fixed the boundaries of every common-school district in the state— it could have delegated that duty to the state superintendent or the county superintendent, but it need not have done so. Having power to authorize in advance or to dispense entirely with any intermediate action, it was within its competence to adopt the result of an unauthorized act, and to declare that act operative, effective and valid, and that we think it did.

In one brief some reference is made to the latter portion in the language of the statute as quoted and it is argued that the validation extends only to those cases where all preliminary steps necessary to the final order were not complied with. We think that construction untenable, and that on the contrary the legislature intended that all districts were validated where the order became final on or before March 1, 1947, notwithstanding there might have been some defect in the preliminary proceedings.

## II

Plaintiff contends that Laws 1947, chapter 377, contains more than one subject which is not clearly expressed in its title, thus vio-

lating article 2, section 16 of the state constitution. The title of the act reads:

"An act relating to schools and the reorganization of school districts, validating the organization of certain school districts, validating certain school boards and certain acts performed by such boards, providing for appointment of school boards in certain cases, and providing for the disorganization of certain school districts."

Reference is made to the act for a full and complete statement but it is noted that section 1 of the act purports to validate districts where the order of the committee became effective on or before March 1, 1946. Section 2 purports to validate districts where the order became final on or before March 1, 1947, and contains four provisos. Of these provisos the effect of the first is to declare a school board elected on or before February 28, 1947, the legal board; the effect of the second is to provide for appointment of a board where the election was not held on or before February 28, 1947, and until the annual school election on April 11, 1947; the effect of the third is that where the county superintendent is unable to find three persons willing to serve on the board he may attach the proposed reorganized district to some adjoining district, and the fourth refers further to the school board and its election. The last sentence of the section directs the school board to prepare a budget, to post notices of the school meeting and to have charge and control of the funds and property of the district. Section 3 provides for the disorganization of certain districts comprising parts or all of new districts and that their treasurers shall transfer funds in their custody to the treasurer of the new district.

The gist of plaintiff's argument is that validation is one subject; that appointment of a school board is another subject; that attachment to an adjoining district where the county superintendent is unable to find three persons willing to serve on the board of a reorganized district is another subject; that disorganization of districts is another subject and that transfer of funds is still another subject. In support our attention is directed to authorities holding that the provisions of an act must correspond with the subject expressed in the title and that the subject matter must not be broader than the title (59 C. J. 811, 812), and to our decisions in *Cashin v. State Highway Comm.*, 137 Kan. 744, 22 P. 2d 939, and *Shrout v. Rinker*, 148 Kan. 820, 84 P. 2d 974. Both of these decisions involved construction of Laws 1931, chapter 80, which is

the uniform operators' and chauffeurs' act. In both of these opinions, to which reference is made, the title of the act is set forth. In the Cashin case we held that section 23 of the act fixing liability of municipal and other corporations, under conditions stated, constitutes a subject "wholly incongruous with, independent of and disconnected with the rest of the act and constitutes a separate subject, thus making the act contain more than one subject." (p. 746.) That section was held unconstitutional, but that it did not affect the remainder of the act. In the Shrout case we held that section 22 of the above act was not unconstitutional. Plaintiff relies on the following language of that decision:

"The reason for the constitutional provision that an act shall not contain more than one subject, which shall be clearly expressed in its title, is to prevent two or more unrelated subjects being covered in an act so that members of the legislature would feel that they should vote for a bill which contained a provision to which they were opposed in order to secure the enactment of the bill with some provisions they considered important." (l. c. 822.)

In discussing the question of double subject matter of an act this court said in State, ex rel., v. Howat, 109 Kan. 376, 198 Pac. 686, 25 A. L. R. 1210:

"In a certain sense, the act embraces two subjects: Regulation of public utilities, and regulation of those industries which have to do with supplying the people with necessaries of life. In the same sense, the second subject is doubly triple. It embraces food, clothing, and fuel, and it embraces production, manufacture, and distribution. According to the same method, the act might be conceived as divided into as many subjects as a carefully prepared index of its contents would disclose. That, however, is not the method by which to determine the scope of a statute. The question in any case is, Are the particulars so diverse that they may not be connoted in a single generic concept? In this instance the general concept is enterprise affected with a public interest, and the grouping is not only natural, but consistent and harmonious." (l. c. 391.)

In State, ex rel., v. Beggs, 126 Kan. 811, 271 Pac. 400, it was held:

"Where the subject of the legislation in question is assimilated to the other provisions of the act and is germane and pertinent thereto it cannot be said to be in violation of section 16 of article 2 of the constitution." (Syl. ¶ 1.)

In City of Wichita v. Sedgwick County, 110 Kan. 471, 204 Pac. 693, it was said:

"Look at the general act of 1876 relating to public education (ch. 122). Its title is, 'An act for the regulation and support of common schools.' Under this simple title there lies the entire statutory foundation of our public-school system, covering not only such matters as schools and school districts, and school officers and their duties, but matters so distantly related thereto as

the disposition of the federal. land grants for school purposes, and including such details as the mode of settlement and acquisition of school lands, duties of the state auditor and governor in relation to the issue of land patents, criminal proceedings and penalties for waste or trespass on school-land properties, etc. But though the title to this act gives no hint of these far-reaching details, yet because they are mere details of the general scheme of the act for the effective regulation and support of common schools, and are germane and pertinent to the principal purpose of the act, they are not subject to constitutional infirmity under section 16 of article 2." (l. c. 473.)

Many years ago this court said that the lawmaking power of the legislature must be upheld unless its action was manifestly in contravention of the constitution (*State v. Barrett*, 27 Kan. 213), and some years later said that when a statute is attacked as being in violation of article 2, section 16 of the constitution for the reason it was not within the title, the title would be liberally interpreted for the purpose of upholding the law. (*State v. Topeka Club*, 82 Kan. 756, 109 Pac. 183.)

A study of the act under question leads to the conclusion that the various provisions of the act, which it is contended are different subjects, all pertain to the general subject and principal purpose of the act, that is, the validation of certain acts growing out of attempted school reorganizations, that the several provisions all have a definite relation to one another, are germane to the general purpose, and do not constitute separable, incongruous, independent or unrelated matters. The title of the act, although perhaps more detailed than necessary, covers the single field of the subject matter of the act. The contention of plaintiff that the act is unconstitutional for duality of subject matter cannot be sustained.

### III

The third contention made by the plaintiff is that Laws 1947, chapter 377, violates article 2, section 16 of the constitution in that it amends G. S. 1945 Supp. 72-301 and .72-5616, which respectively refer to when a common-school district shall be deemed to be organized, and to the time when an order of a reorganization committee shall become final, and other matters. It may be observed the last section is section 15 of Laws 1945, chapter 291, and that it ever had any potency for any purpose may be doubted in view of our decision in *State, ex rel., v. Hines,* supra. No extended argument is made in support of this contention, plaintiff contenting himself by stating that under the principles laid down in four decisions cited,

the act violates the constitutional provision. The same contention has been made with respect to many previous acts of the legislature, as the annotations in the general statutes to the particular section of the constitution will disclose. A review of these decisions to show their applicability or lack of it would unduly lengthen this opinion.

A contention similar to that now made was before this court in *Parker-Washington Co. v. Kansas City*, 73 Kan. 722, 85 Pac. 781, where it was said:

"It is argued that the act of 1905 amends various specific sections of the statutes relating to cities of the first class, the language of which is closely followed in the corresponding sections of the new act, only such alterations being made as are necessary to accomplish the object already indicated—a change in the method of paying for public improvements in cities having a population of over 50,000; that the new act contains no reference to the old one, does not accomplish its repeal, and is therefore within the letter and spirit of the prohibition quoted. It is needless at this time to go into a discussion of the purpose and effect of the provision of the constitution referred to. That it has no application to amendments by implication is well settled. (Cooley, Const. Lim., 6th ed., 182; 26 A. & E. Encycl. of L. 708.) The act of 1905 in a sense amends various sections of the earlier act, but it does so by implication; it does not cover their entire subject-matter, and hence does not supersede them, but merely restricts the field of their operation; it is a complete and in a sense an independent enactment, which requires no reference to any other statute to make its meaning clear. The objection made to it in this respect is therefore not well taken." (l. c. 723.)

The same thought was stated and followed in *Miltonvale Rural High School v. Community High School*, 153 Kan. 756, 113 P. 2d 1095, where a number of our decisions are refered to and comments made.

In *Harkrader v. Whitman*, 142 Kan. 186, 46 P. 2d 1, this court had before it the question of general and specific laws covering shareholders' rights in a building and loan association, and stated that all statutes are to be construed so as to sustain rather than defeat them, and are to be given effect if the language will permit, and that if there is any conflict between the general and specific statutes, the specific statute controls in a proper case.

The act now under consideration does not cover all school districts, only certain ones are within its purview, and the provisions of the act can have no effect on other districts. There is a field of operation for the sections which plaintiff says have been amended and should be repealed. If there is any amendment or repeal at all, it is only partial and purely by implication, in which event it

does not offend the constitutional provision. It also seems clear the legislature had no intention or desire to amend the general school law; that the provisions of the act attacked are special in their nature and apply only to districts within the act, and that there is a field of operation for both the act attacked and those sections allegedly amended and not repealed. Plaintiff's third contention cannot be sustained.

## IV

Plaintiff's last contention is that there is an unconstitutional delegation of legislative power in Laws 1947, chapter 377, in that it purports to direct the county superintendent, with the advice and consent of the county committee, to attach the territory of a reorganized school district to an adjoining district if three persons of the reorganized school district are not willing to serve on the school board of that district.

After directing attention to *State, ex rel., v. Storey,* 144 Kan. 311, 58 P. 2d 1090, where it was said that the establishment of a school district is legislative in character, and to *State, ex rel., v. Hines,* supra, where it was held that such power could not be delegated to a county reorganization committee and Laws 1945, chapter 291 (G. S. 1945 Supp., art. 72, ch. 56), was declared unconstitutional, plaintiff argues that the attachment provisions are legislative in character, and constitute an invalid delegation of power. Conceding for present purposes that such a conclusion might be reached, we are confronted with the proposition that no such situation as is contemplated by the statute exists under the facts of the case before us. Under many authorities the court ought not to consider constitutionality unless necessary to a decision. Therefore, we shall not consider the defendants' arguments, nor the possibility that even though the particular provision is unconstitutional, the remainder of the statute can be upheld (see, *e. g., Cashin v. State Highway Comm.,* supra, syl. ¶ 2).

The relief sought by the plaintiff is denied. Judgment is ordered for the defendants.