No. 32,202

THE METROPOLITAN BUILDING COMPANY, FRANK C. BROSIUS, C. L. BROSIUS, GEORGE H. SIEDHOFF, G. A. HELZBERG and R. M. SUTTON, *Plaintiffs*, v. FRANK J. RYAN, Secretary of State, HENRY W. KOENEKE, Bank Commissioner, and ROLAND BOYNTON, Attorney-general, as Members of the State Charter Board of the State of Kansas, *Defendants*.

(41 P. 2d 1002)

Opinion filed March 9, 1935.

*Robert C. Foulston, George Siefkin* and *J. B. Patterson,* all of Wichita, for the plaintiffs.

*C. V. Beck,* attorney-general, for the defendants.

The opinion of the court was delivered by

SMITH, J.: This is an action in mandamus wherein plaintiff seeks to compel the state charter board to reinstate the charter of the Metropolitan Building Company, which was forfeited for nonpayment of annual fees.

The Metropolitan Building Company defaulted in the payment of its fees for 1932 and 1933. Its charter was forfeited on December 31, 1933.

The attorney-general brought a suit to wind up the affairs of the company. A receiver was appointed by the district court. This receiver took charge of the affairs of the company, and now has charge of them.

The fees of the company amounted to $250 for each year. On August 10, 1934, the Metropolitan Building Company made application to the charter board for reinstatement of its charter. At the same time the company deposited a check for $500 with the secretary of the charter board in payment of the fees for 1932 and 1933. The charter board denied this application. This suit followed.

The state charter board is comprised of the secretary of state, the bank commissioner and the attorney-general. The position of the charter board at the hearing on the application for reinstatement, which is urged in this action, is that the charter board has no authority except that conferred upon it by statute, and the statute makes no provision for the reinstatement of a charter of a corporation for profit, which has been forfeited for nonpayment of fees.

R. S. 17-701 provides, in part, as follows:

"Every corporation organized under the laws of this state, for profit, shall make a report in writing to the secretary of state annually, on or before March 31, showing the condition of the corporation at the close of business on the 31st day of December next preceding the date of filing and in such form as the secretary of state may prescribe . . . ."

This statute provides for the payment of an annual fee when the report is made. This fee is based on the amount of paid-up capital stock in the company.

R. S. 17-706, among other things, provides, as follows:

"The failure of any domestic corporation to file the annual statement and to pay the annual fee herein provided for within ninety days of the time for filing and paying the same shall, in addition to other penalties, work the forfeiture of the charter of such corporation organized under the laws of this state *and the charter board may at any time thereafter declare the charter of such corporation forfeited;* and upon the declaration of any such forfeiture it shall be the duty of the attorney-general to apply to the district court of the proper county for the appointment of a receiver to close out the business of such corporation."

It was in pursuance of this statute that the charter was forfeited and the attorney-general brought the action that has been spoken of to wind up the corporation. The charter board makes no defense based on the wisdom of allowing the reinstatement. It defends its action solely upon the ground that it has no authority to allow the reinstatement. Therefore, if the power for the charter board to grant this reinstatement and to accept the back fees may be found in the statute, the peremptory writ should issue.

It may be said at the outset that the charter board has no power or authority that is not bestowed on it by the statute. See *State, ex rel., v. Wheat Farming Co.*, 137 Kan. 697, 22 P. 2d 1093, and authorities cited.

There are some statutes that deal with the authority of the charter board to reinstate forfeited charters.

One of these is R. S. 1933 Supp. 17-701a to 17-701c. These sections are as follows:

"That all corporations organized under the laws of this state, and all foreign corporations admitted to do business in this state, which are not organized and operated for pecuniary profit and not now required by law to file annual reports with the secretary of state shall make a report in writing to the secretary of state, annually, on or before the 31st day of March, on blanks to be furnished by the secretary of state, covering, as of December 31 next preceding the date of filing, the following facts: (1) The name of the corporation: (2) location of its principal office or place of business; (3) names of the president, secretary and treasurer and members of the board of directors or trustees, with the post-office address of each; (4) date of the annual election of the officers of such corporation. Such report shall be signed by the president, secretary or other managing officer of such corporation, and forwarded to the secretary of state. At the time of filing such annual report each such corporation shall pay to the secretary of state a filing fee of one dollar." (17-701a.)

"That no corporation shall be required to file its annual report under this act until the proper month hereinbefore provided for the filing of such report, next following the expiration of six months from the date of its incorporation or admission to do business in this state." (17-701b.)

"That if any corporation fails or refuses to file the annual report and pay the filing fee as herein provided for within ninety days of the time for filing and paying the same, the state charter board may, at any time after having served due notice in writing by registered mail of such failure, declare the charter or certificate of authority of such corporation forfeited: *Provided,* That whenever any corporation shall have inadvertently let its charter or certificate of authority be forfeited and canceled under the provisions of this act, without any intention to surrender its corporate privileges, the president and secretary, or the board of directors or trustees, of such corporation may within one year from the date of such forfeiture and cancellation file a written application, stating these facts, with the state charter board for reinstatement. Upon receipt of such application the state charter board shall immediately set aside said forfeiture and cancellation of said charter, and thereupon said charter shall stand as if all reports and fees required by law had been promptly made and paid and no forfeiture or cancellation thereof had: *And provided further,* That the corporate acts of such corporation between the date of such forfeiture and cancellation and the date of setting aside thereof are hereby legalized and their rights and equities preserved to them." (17-701c.)

Defendants contend these sections relate only to nonprofit corporations. To understand the situation, it will be necessary to study the history of these sections. They were chapter 139 of the Laws of 1931. This chapter amended R. S. 17-710 and repealed the original section. R. S. 17-710 was originally section 10 of chapter 135 of the Laws of 1913. That chapter provided for corporations paying annual fees, and provided for the forfeiture of the charter of a corporation that failed to pay. Section 10 of that chapter is as follows:

"All educational, religious, scientific, charitable corporations and all insurance, building and loan associations or corporations and all corporations which are not organized or operated for pecuniary profit, which are not doing business for pay, are exempt from the provisions of this act: *Provided,* That no other corporations doing business in this state shall be exempt: *And provided further,* That building and loan associations in order to secure such exemptions must list for taxation all mortgages by them owned in excess of capital stock."

It will be noted that the above section provides that the duty of paying fees and making reports and the danger of having its charter forfeited did not apply to certain types of corporations.

The plaintiff in this case does not belong to any of the classes covered by that section. It is a corporation for profit.

Section 10 of chapter 135 of the Laws of 1913 was amended by chapter 136 of the same session laws so as to include banking corporations. As so amended, it was included in the Revised Statutes as R. S. 17-710 and was the law until the enactment of chapter 139 of the Laws of 1931, which amended and repealed it.

It will be noted that section 1 of that act provides that all corporations, whether organized under the laws of this state or not, organized or doing business for profit, shall make an annual report to the secretary of state containing certain information, and pay a fee of one dollar.

The third section, being R. S. 1931 Supp. 17-701b, provides for additional time in which the corporation may make its report.

The fourth section, being R. S. 1931 Supp. 17-701c, is the section upon which plaintiff relies. It provides that if any corporation fails to file the annual report or pay the fee as "herein provided" the state charter board may declare the charter forfeited. The section then contains the following provision:

"That whenever any corporation shall inadvertently let its charter or certificate of authority be forfeited and canceled under the provisions of this

act, without any· intention to surrender its corporate privileges, the president and secretary, or the board of directors or trustees, of such corporation may within one year from the date of such forfeiture and cancellation file a written application, stating these facts, with the state charter board for reinstatement. Upon receipt of such application the state charter board shall immediately set aside said forfeiture and cancellation of said charter, and thereupon said charter shall stand as if all reports and fees required by law had been promptly made and paid and no forfeiture or cancellation thereof had: *And provided further,* That the corporate acts of such corporation between the date of such forfeiture and cancellation and the date of setting aside thereof are hereby legalized and their rights and equities preserved to them."

This statement of the history of R. S. 1933 Supp. 17-701a and 17-701c shows that the legislature gave consideration to what class of corporations should pay the fee based on capital stock and what class should pay an annual fee of one dollar. At any rate, there is no ground at all for a conclusion that the provisions of section 4 applied to any other class of corporations than those named in the first section of the act.

Plaintiff next argues that R. S. 17-223 confers on the charter board the power contended for here. That section is chapter 130 of the Laws of 1911. It was passed in a chapter by itself and by its own terms applies to corporations which have permitted their charter to expire by lapse of time, and to no other. The charter of plaintiff did not expire by lapse of time, but was forfeited for nonpayment of fees. This conclusion is fortified by the fact that the two chapters immediately preceding chapter 130 of the Laws of 1911 deal with penalties to be collected for nonpayment of fees, and to cancellation of charters for nonpayment of fees.

Apparently plaintiff has construed R. S. 17-223 and R. S. 17-224 together. They deal with different situations. We have already considered R. S. 17-223.

R. S. 17-224 was section 1 of chapter 120 of the Laws of 1917. It provides as follows:

"That whenever any corporation, created under the laws of the state of Kansas and which has been continuously engaged in carrying on one or more of the purposes of its organization since the forfeiture and cancellation of its charter under chapter 129 of the Session Laws of 1911 of the state of Kansas, shall have inadvertently let its charter be so forfeited and canceled, but without any intention to surrender its corporate privileges and retire from business, such of said facts that are not shown by the records of the secretary of the state of Kansas or of the state charter board being established by resolution of its present board of directors, certified by its present secretary under the seal of said corporation, then and upon written application, accompanied by said certified

resolution, made by the present president and secretary of said corporation to the said charter board, and upon payment by said corporation of all corporate fees owing the state of Kansas by said corporation, ascertained in such amounts as if duly paid by such corporation, and upon filing a report as now required by the laws of the state of Kansas by such corporation, such application, report and payment being made within six months, said charter board shall immediately set aside said forfeiture and cancellation of said charter and thereupon said charter shall stand as if all reports and payments required by the laws of the state of Kansas had been promptly and duly made and no forfeiture or cancellation thereof had: *Provided, also,* That the corporate acts of such corporation between the date of such forfeiture and cancellation and the date of such setting aside thereof, are hereby legalized and their rights and equities preserved to them."

It will be seen that the section only applies to corporations whose charters were forfeited under the provisions of chapter 129 of the Laws of 1911. An examination of the history of that act is interesting. At the time the legislature met in 1911 the law provided that corporations should make annual reports to the secretary of state containing certain information and should pay a fee of one dollar. The statute gave the charter board power to forfeit the charter of any corporation that did not make the report and pay the fee. One who reads the session laws with the eye of a historian, as well as the eye of a lawyer, would conclude that the charter board had not been as zealous about requiring the reports as some members of the legislature deemed desirable, because the session of 1911 passed chapter 128, which provided for a penalty of five dollars for each day that a corporation's report was delinquent and made it the duty of the attorney-general or county attorney to collect it. The same legislature passed chapter 129. It provided as follows:

"Within ninety days after the passage of this act the charters of all domestic corporations, for profit, which have failed during the three years next preceding to file their annual statements with the secretary of state, as required by law, are hereby declared forfeited, and the state charter board is directed to cancel said charters: *Provided,* That any corporation whose charter is declared forfeited and is canceled shall have the right within sixty days after the cancellation of its charter to bring an action in any court of competent jurisdiction to revive said charter, and upon payment of all delinquent fees and the costs of such action by the plaintiff the court may give judgment reviving such charter and reinstating such corporation. The plaintiff shall file with the secretary of state for the guidance of the charter board a certified copy of the judgment." (Laws 1911, ch. 129, § 1.)

The effect of that chapter was to forfeit their charters at once. It will be noted the only way provided for a reinstatement of one of the forfeited charters was by an action in the district court.

The only way in which a charter forfeited by chapter 129 of the Laws of 1911 could be reinstated was by action in court until the enactment of chapter 120 of the Laws of 1917. That chapter is R. S. 17-224. Just why the legislature did not give the charter board general power to reinstate the charter of a corporation that had been forfeited no one knows. The fact remains that the power to reinstate charters that had been forfeited for nonpayment of fees was confined to those whose charters had been forfeited under the provisions of chapter 129 of the Laws of 1911.

Plaintiff argues that since the charter board has been reinstating forfeited charters upon payment of back fees since 1911 that this should be construed as an interpretation of its power by an administrative body and entitled to careful consideration by the courts. Such an interpretation is entitled to careful consideration. In a case where the statute was ambiguous or where there was a question about the intention of the legislature, the operative interpretation might tip the scale in favor of holding that the board had the power claimed. We do not know of any case, however, where the operative interpretation has been the only ground upon which a board has been held to have a claimed power. Such would be the case here if we should hold in favor of plaintiff in this case. There is no ambiguity or doubt in the statute.

The motion of defendants to quash the writ is therefore allowed, and the peremptory writ is denied.