826 P.2d 576

**In the Matter of the Last WILL and Testament OF Wilhelmina Neat COE, Deceased.**

**Faidyne TONEY, Charles A. Toney, and Byron Ross Toney, Plaintiffs–Appellees,**

v.

**Ralph M. COE, Defendant–Appellant,**

**Byron Coe, Eldon A. Coe, Donald G. Coe, First National Bank in Albuquerque, Oliver B. Cohen, Nathaniel Wollman, James A. Hoffman, William F. Aldridge, The Peace Foundation, Inc. (1969), and The Peace Foundation, Inc. (1957), Defendants–Appellees.**

No. 12434.

Court of Appeals of New Mexico.

Jan. 16, 1992.

O.R. Adams, Jr., Albuquerque, for plaintiffs-appellees Faidyne Toney, Charles A. Toney and Byron Ross Toney.

John M. Eaves, John G. Baugh, Eaves, Bardacke & Baugh, P.A., Charles G. Berry, Charles G. Berry & Associates, P.A., Albuquerque, for defendant-appellant Ralph M. Coe.

Jack L. Love, Love and McClelland, Albuquerque, for defendants-appellees Peace Foundation, Inc., Nathanial Wollman, James A. Hoffman, Donald Coe and William F. Aldridge.

Oliver B. Cohen, pro se.

John A. Klecan, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellees William F. Aldridge and Oliver B. Cohen.

Robert M. St. John, Patricia M. Taylor, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee First Nat. Bank in Albuquerque.

## OPINION

DONNELLY, Judge.

Ralph M. Coe (Coe) appeals from a judgment denying his motion to set aside the last will and testament of his deceased wife, Wilhelmina Neat Coe (Wilhelmina), and dismissing his counterclaim, cross-claims and third-party claims. Coe sought, among other things, to have the Peace Foundation, Inc., a nonprofit corporation incorporated in 1957 (Foundation 1957), adjudicated to have been legally dissolved and to be a different entity from the nonprofit corporation bearing the same name, incorporated in 1969 (Foundation 1969). Coe also appeals from the district court's judgment quieting title in the name of the Foundation 1969 to certain realty, and denying his action seeking to quiet title in his name to property claimed by the Foundation 1969 and property held by the testamentary trust established under the will of his late wife. Two issues are presented on appeal: (1) whether a testamentary trust created under Wilhelmina's last will and testament is void and unenforceable; and (2) whether the Foundation 1969 legally obtained title to real property previously held in the name of the Foundation 1957. We affirm in part and reverse in part.

The events giving rise to this appeal are lengthy and complex. Coe and Wilhelmina were married in 1928. They were divorced in 1950. Pursuant to the terms of the decree of divorce, Wilhelmina received several parcels of realty as her separate property; she received additional real property from Coe in 1952, while the parties were single. In 1953 Coe and Wilhelmina remarried.

On December 23, 1957, Coe and Wilhelmina incorporated the Foundation 1957, a nonprofit corporation. Wilhelmina was named as president and Coe was named as vice-president of the corporation. As specified by the articles of incorporation, the objects of the Foundation 1957 were "[t]o assist and financially aid educations [sic], scientific, religious and charitable institutions, associations, and organizations, as well as to carry out such assistance in the broadest and most helpful manner," and to perform such other things necessary to attain the "wholly and exclusively" charitable and benevolent objects of the corporation.

On December 24, 1957, Coe and Wilhelmina executed a warranty deed conveying several tracts of realty to the Foundation 1957. The property described in the deed was, at the time of the deed's execution

and delivery, the separate property of Wilhelmina, and consisted of realty received by Wilhelmina under the decree of divorce and under a deed executed by Coe to her in 1952.

The December 24, 1957, deed executed by Coe and Wilhelmina recited, among other things, that the property described therein was being conveyed to the Foundation 1957:

> To Glorify the ONE GOD by the building of, [sic] an "ALL FAITHS CENTER" for the teaching & rehabilitation of the spiritually and physically handicapped. To encourage and help the churches in securing bibles and good books for their libraries. To help with the establishing of "Meditation Rooms" in hospitals, hotels & office buildings. * * * [T]o further the cause of world unity & international peace in truth, love & life, that all may live in brotherly love & peace the life abundant.

Following incorporation of the Foundation 1957, Coe served as its vice-president and secretary-treasurer until 1969. In 1969 the state corporation commission entered an order dissolving the corporation because of Coe's failure to file the annual corporate reports for the years 1966, 1967, and 1968 and to remit the required filing fee. On August 7, 1969, Coe and Wilhelmina, together with several other individuals, incorporated a new corporation called the "Peace Foundation, Inc." (Foundation 1969), with the same directors and officers as the Foundation 1957, and adopted the same corporate bank account number, principal place of business, and federal tax identification number. As evidenced by the articles of incorporation, the purposes of the Foundation 1969 differed in part from those of the Foundation 1957. The purposes of the Foundation 1969 were:

> [T]o assist and financially aid people and organizations in the broadest and most helpful manner. To acquire by purchase, exchange, lease, grant, gift, devise or bequest, or otherwise, real and personal property. To exercise all of the powers granted to associations not for profit by

virtue of [Sections] 51–14–20 to 51–14–40 [NMSA 1953 (Repl. Vol. 8, Pt. 1) ].

No deeds or assignments were executed transferring or conveying the assets of the Foundation 1957, following its dissolution, to the Foundation 1969; however, the officers and directors of the latter corporation took possession of and treated the assets of the dissolved corporation as belonging to the newly created corporation.

On June 1, 1970, after consulting with an attorney, Wilhelmina executed a last will and testament. The will provided for the disposition of certain assets to Coe and others, and directed that the residue of her estate be placed in a testamentary trust for the benefit of Coe and the "Peace Foundation, Inc." The will also provided that the trustee should pay over to Coe the sum of $500 per month from the income of the trust "or so much as may be necessary because of changed economic conditions"; additionally, the trustee was authorized in his discretion to "pay over to or apply for the benefit of ... COE so much of the principal" as deemed necessary, and that "[d]uring the lifetime of [Coe], to the extent available, and subject to the previous conditions of this will, the Trustee shall utilize so much of the trust estate as it deems desirable to aid in the work of the PEACE FOUNDATION, INC." The testamentary trust named twenty-eight individuals, consisting of relatives and friends of Wilhelmina, including Faidyne Toney (Wilhelmina's niece), and Faidyne's husband, Charles A. Toney, and their son, Byron Ross Toney (the Toneys), and specified that they "are to receive, free of charge, any services offered by The Peace Foundation, Inc., [including] sponsored clinics, health services, housing and social services." The will also provided that "[t]his trust shall terminate twenty-one years after the death of [Coe] and thereupon the remaining property held in trust shall be distributed, discharged of trust, to the PEACE FOUNDATION, INC., a New Mexico corporation, or its successor."

Wilhelmina died on December 28, 1970, and on February 5, 1971, Coe petitioned the district court for probate of her will and for

appointment as administrator. Thereafter, on February 11, 1971, Coe was appointed as special administrator of Wilhelmina's estate. The will was admitted to probate on March 10, 1971. The estate remained open until March 9, 1977, when pursuant to Coe's request the probate proceedings were closed. The order closing the estate specified that the court would retain jurisdiction to enter further pleadings, orders, and judgments therein.

In April 1982 the Toneys filed a civil action against Coe, the First National Bank in Albuquerque, and Oliver Cohen, as trustee of the testamentary trust, seeking an accounting of trust assets, an award of damages, and the removal of the trustee of the testamentary trust and the officers of the Foundation 1969. The complaint alleged, in part, that the estate had been improperly administered and that the Foundation 1969 had misused and failed to properly dispose of trust assets. The Toneys also filed a motion in the estate proceedings to reopen the probate action and sought an accounting of the estate assets. Thereafter, the district court dismissed both proceedings initiated by the Toneys for lack of standing. On appeal, our supreme court, in an unpublished decision dated May 31, 1984, consolidated the appeal in the two actions, reversed the orders entered by the district court, and held that the Toneys had standing to invoke the district court's aid to secure and preserve the assets of the trust estate and that Faidyne Toney had the right to obtain a trust accounting as a current or future trust beneficiary under NMSA 1978, Section 45–7–303.

In 1982 Coe petitioned the district court to reopen the proceedings in Wilhelmina's estate. The court granted the motion, accepted an amended final account and report filed by Coe, and ordered certain assets of the estate to be placed in the testamentary trust. On September 3, 1982, the district court entered an order approving the final account and report and again ordered that the estate be closed.

Following remand of the Toneys' appeal, the district court began a series of hearings on the relief sought by the Toneys and ordered that the Toneys' civil action be consolidated with the estate proceeding. In November 1988 Coe filed an amended counterclaim, cross-claims and third-party claims in the action brought by the Toneys. Coe alleged that his wife lacked testamentary capacity to execute her will dated June 1, 1970, that the will had been improperly executed, that the will was the product of fraud, undue influence, mistake and the wrongful acts of others, that the prior probate proceedings should be declared void, and requested that the court enter an order determining that Wilhelmina died intestate. Additionally, Coe sought to set aside the testamentary trust, to quiet title in himself to the property held by the testamentary trust for the estate, and to quiet title in himself as "trustee in liquidation" of the property held in the name of the Foundation 1957. Coe also asserted that his own mental incapacity and the alleged fraud of others had served to toll the applicable limitation periods ·in the estate proceeding.

At the conclusion of the evidentiary hearings, the district court issued extensive findings of fact and conclusions of law as to each of Coe's claims, reserved jurisdiction "over all matters relating to the Testamentary Trust * * *, and the award of costs and attorneys fees from the Testamentary Trust," and, among other things, denied Coe's motion to reopen the probate proceedings; upheld the validity of Wilhelmina's will and the testamentary trust; denied Coe's claims of fraud; denied that Wilhelmina was incompetent or that Coe was incapacitated; determined that Coe was barred and estopped from challenging the disposition of the property disposed of under the will or prior deed; and ordered that title to the property conveyed in the 1957 deed from Coe and Wilhelmina to the Foundation 1957 be quieted in the name of the Foundation 1969.

## I. VALIDITY OF TESTAMENTARY TRUST

█ Under the terms of the last will and testament of Wilhelmina, the residue of her estate, consisting primarily of real estate located in Bernalillo County, was left in

trust for the benefit of Coe and the "Peace Foundation, Inc." The trust also provided that "[d]uring the lifetime of RALPH M. COE, to the extent available, and subject to the previous conditions of this will, the Trustee shall utilize so much of the trust estate as it deems desirable to aid in the work of the PEACE FOUNDATION, INC." The will additionally imposed an equitable charge on property given to the "Peace Foundation, Inc.," in favor of twenty-eight other individuals named in the trust.

Coe contends that the trust created under Wilhelmina's will is void and that the entire corpus of the trust passed to him as his wife's sole intestate heir. He asserts that the district court erred in refusing to determine that the testamentary trust failed for lack of certainty because the purposes of the trust are vague and incapable of enforcement, and that its provisions constitute an impermissible mixed private and charitable trust investing the trustee with uncontrolled discretion in disbursing trust funds for either charitable or noncharitable purposes, or both.

Relying in part upon *Grigson v. Harding*, 154 Me. 146, 144 A.2d 870 (1958), Coe argues that where a trustee is invested under the terms of a trust with the power to apply the trust corpus to either a charitable purpose or to a purpose which is noncharitable, the trust will fail for uncertainty. *See also In re Hayward's Estate*, 65 Ariz. 228, 178 P.2d 547 (1947); *Wilce v. Van Anden*, 248 Ill. 358, 94 N.E. 42 (1911); *Bank of Maysville v. Calvert*, 481 S.W.2d 24 (Ky.Ct.App.1972); *In re Long's Estate*, 190 Wash. 196, 67 P.2d 331 (1937).

In the instant case, the district court found that the testamentary trust created under Wilhelmina's will was valid, its terms were "clear and unambiguous," and that "its purposes are capable of being accomplished." We agree with the district court that the terms of the trust are sufficient to withstand the challenges of uncertainty and vagueness. *See Loco Credit Union v. Reed*, 85 N.M. 729, 516 P.2d 1112 (1973) (upholding validity of trust against claim that it lacked necessary certainty as to

essential elements of the trust). *See also Golleher v. Horton*, 148 Ariz. 537, 715 P.2d 1225 (Ct.App.1985) (elements of a valid trust include a competent settlor and trustee, intent to create a trust, ascertainable trust res, sufficiently ascertainable beneficiary, legal purpose, and legal term).

■ Nor do we find the trust invalid because the trust is mixed, containing provisions which are both charitable and private in nature. *See Moskowitz v. Federman*, 72 Ohio App. 149, 51 N.E.2d 48 (1943) (validity of mixed trust upheld where provisions of trust provided it was to terminate after twenty years, with discretion in the trustee to distribute the property to the next of kin of the testator or to charitable organizations, or both); *Rice v. Morris*, 541 S.W.2d 627 (Tex.Ct.App.1976) (mixed private and charitable trust held valid where property was placed in trust for both the benefit of a definite class of beneficiaries and distinctly ascertainable private individuals). *See generally* IVA Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 398.1 (4th ed.1989).

A common impediment to the validity of a mixed trust is the rule against perpetuities. George T. Bogert, *Trusts* § 65, at 241 (6th ed.1987) ("If a trust is mixed, and the whole of it or the private part is limited in duration to lives in being and/or twenty-one years, there is no objection to it on the ground of duration."). *See generally* W.W. Allen, Annotation, *Gift to Charity as Affected by Conjoined Noncharitable Gift Invalid Under Rule or Statute Against Perpetuities or Rule Against Accumulations*, 170 A.L.R. 760 (1947). The trust herein complies with the rule against perpetuities because the terms of the trust provide that both the private and charitable portions of the trust are to terminate twenty-one years after the death of Coe. *See* NMSA 1978, § 47–1–2 (Repl.Pamp.1991).

Here, the trust purposes are clearly delineated and direct the trustee to carry out the terms of the private portion of the trust, with discretion to also distribute "so much of the trust estate as it deems desirable to aid in the work of the PEACE FOUNDATION, INC." Thus, we conclude

that the district court properly denied Coe's challenges to the validity of the testamentary trust. Moreover, the district court found that Coe's "motion to set aside the will is a claim against the estate of Wilhelmina Neat Coe and [he] is estopped to file such * * * claim by reason of his acceptance of benefits of the estate and his failure to resign as administrator of the estate." The court further found that there was no fraud, undue influence or wrongful conduct practiced upon Wilhelmina by her attorney regarding the preparation or execution of her will; that Coe was of sound mind and acted free of mistake, fraud, duress or undue influence at all material times; and that his claims seeking to set aside the will and trust were barred both by the applicable statute of limitations and the probate claims statute.

We agree with the district court that Coe's attack upon the efficacy of the will and the trust was also barred by the provisions of the applicable statute of limitations in effect at the time the probate proceedings were commenced and when the will was admitted to probate. *See* NMSA 1953, §§ 30-2-13, -21. Six months after entry of the order admitting the will to probate, the order became final and the statute of limitations for contesting the validity of the will expired. § 30-2-13. *See also Humphries v. Le Breton*, 55 N.M. 247, 230 P.2d 976 (1951); *Stitt v. Cox*, 52 N.M. 24, 190 P.2d 434 (1948). *Cf.* NMSA 1978, § 45-3-803(B) (Repl.Pamp.1989) (all claims arising against a decedent's estate are barred unless presented within four months after such claim arises). Moreover, under Section 45-3-803(B) (enacted by 1975 N.M.Laws, ch. 257, § 3-803), Coe had four months to contest the distribution of the property ordered by the court to be transferred to the testamentary trust on June 2, 1982, and failed to timely present such challenge.

■ Coe initially requested that Wilhelmina's will be admitted to probate, served as administrator of her estate, accepted the benefits provided for him under the will, and did not contest the validity of the will until April 16, 1987, more than sixteen years after its presentation for probate. The district court found that Coe's actions amounted to a ratification of the will and the testamentary trust. The record amply supports this finding. *See In re Estate of Johnson*, 39 Ill.App.3d 246, 350 N.E.2d 310 (1976) (a party accepting benefits under a will may be deemed to have ratified and confirmed the provisions of such instrument). The district court also found that Coe was competent at all times material to the proceedings herein. In sum, we conclude that Coe's challenges to the validity of Wilhelmina's will and the testamentary trust created thereunder were properly denied.

## II. OWNERSHIP OF FOUNDATION PROPERTY

■ After dissolution of the Foundation 1957 by order of the state corporation commission in 1969, the officers and directors of the corporation formed and incorporated the Foundation 1969, utilizing the same corporate name and bank account of the former corporation. In its judgment entered May 3, 1990, the district court, inter alia, quieted title in the Foundation 1969, against the claims of all of the parties herein, to the real property previously held in the name of the Foundation 1957, and also quieted title to other realty held in the name of the testamentary trust.

On appeal, Coe challenges the propriety of the district court's judgment quieting title in the Foundation 1969 to the property held by the Foundation 1957 at the time of its dissolution. Coe argues that there was never any conveyance from the officers or directors of the Foundation 1957 to the Foundation 1969, nor has the latter corporation obtained any instrument evidencing color of title to the realty in question.

■ It is a familiar axiom of New Mexico law that although a quiet title action may be brought by anyone claiming an interest in real property, *Christy v. Petrol Resources Corp.*, 102 N.M. 58, 691 P.2d 59 (Ct.App.1984), nevertheless, a party seeking to quiet title to real estate must recover on the strength of his own title and cannot rely on the weakness of the title claimed by

his adversary. *Perea v. Martinez,* 95 N.M. 84, 619 P.2d 188 (1980); *Baker v. Benedict,* 92 N.M. 283, 587 P.2d 430 (1978); *Esquibel v. Hallmark,* 92 N.M. 254, 586 P.2d 1083 (1978). *See also* 2 Rufford G. Patton & Carroll G. Patton, *Patton on Land Titles,* § 538 (2d ed.1957) (decree quieting title in claimant must be supported by strength of claimant's own title, and function of decree is not to confer title but merely to confirm claimant's pre-existing title).

■ In the instant case, it is undisputed that there were no conveyances of the real estate claimed by the Foundation 1969 from the Foundation 1957, nor were there any other deeds to the Foundation 1969 from other individuals validly acting on behalf of the dissolved corporation. The Foundation 1969 claims title to the realty herein by virtue of operation of law, contending that as a result of its subsequent incorporation adopting the same name, general purposes, and having the same officers as the previously dissolved corporation, title vested in it as a successor corporation to all of the assets previously held in the name of the dissolved corporation. It also argues that the district court's findings that Coe waived or is estopped to deny ownership of the realty in question in the Foundation 1969 precludes any challenge on his part to the ownership of the property claimed by the successor corporation.

■ When an order dissolving a corporation is issued, what disposition may properly be made of realty or other assets held in the corporation's name? This issue has not been previously addressed by prior appellate decisions in New Mexico. As observed in *Vulcan Materials Co. v. United States,* 446 F.2d 690 (5th Cir.), *cert. denied,* 404 U.S. 942, 92 S.Ct. 279, 30 L.Ed.2d 255 *reh'g denied,* 404 U.S. 1006, 92 S.Ct. 564, 30 L.Ed.2d 559 (1971), in the absence of a statute providing otherwise, dissolution of a corporation is tantamount to corporate death and effectively terminates the existence of the corporation. *See also Metropolitan Bldg. Co. v. Ryan,* 141 Kan. 521, 41 P.2d 1002 (1935); *Platz v. International Smelting Co.,* 61 Utah 342, 213 P. 187 (1922). After dissolution, a corporation is

without power to dispose of its property, except as specifically authorized by law or judicial order. *See Bradley v. Reppell,* 133 Mo. 545, 32 S.W. 645 (1895).

NMSA 1953, Section 51–14–28 (Repl.Vol. 8, Pt. 1), in effect at the time of the dissolution of the Foundation 1957 in 1969, required the filing of an annual corporate report and provided that after notice of such delinquency if the report is "not made and filed within ninety [90] days after such notice, the corporation shall forfeit its right to conduct its affairs * * * in accordance with the laws of this state relating to the organization and supervision of nonprofit corporations." Section 51–14–28 further provided that:

> Any nonprofit corporation which fails to make and file any such [annual] report within one [1] year following the due date thereof shall thirty [30] days after mailing of written notice by the state corporation commission stand dissolved, and the name of such nonprofit corporation shall be stricken from the files of the state corporation commission.

The district court specifically found that "[n]o assets of the dissolved Peace Foundation * * * were ever deeded or otherwise conveyed to any other corporation." With the exception of NMSA 1953, Section 51–14–34 (Repl.Vol. 8, Pt. 1), the Foundation 1969 has cited no statute or other authority supporting its claim that as a matter of law it was validly vested with title to the ownership of the realty held by the Foundation 1957 following the dissolution of the prior corporation. We find Section 51–14–34 inapposite under the situation presented here because it relates to the formation of a new corporation after the expiration of the prior corporation's term of existence and not to situations where a corporation has been involuntarily dissolved. *Cf. Metropolitan Bldg. Co. v. Ryan* (statutory provisions permitting revival of corporation after expiration of its term of existence do not apply to situations where a corporation has been involuntarily dissolved). Nor does the district court's finding that Coe waived or is estopped from challenging the validity of the judgment quieting title to the property

claimed by the Foundation 1969 and previously held by the dissolved corporation, operate to provide a basis for quieting title in the Foundation 1969, where the latter corporation has failed to establish ownership to the property on the strength of its own title. *See Perea v. Martinez.* The Foundation 1969 additionally contends that Coe is precluded from challenging the efficacy of the district court's judgment quieting title in its name because Coe has not challenged certain findings of fact adopted by the court below. Our review of the record indicates that this issue was properly preserved both in his docketing statement and his brief-in-chief. Under these circumstances, we conclude that the district court erred in entering its judgment quieting title in the Foundation 1969 as to realty previously held in the name of the Foundation 1957.

■ Coe also argues that if the district court's order quieting title to the property in the name of the Foundation 1969 is invalid, then such property must be held to have "reverted to the Grantors, Wilhelmina and Ralph Coe," or alternatively that such property is subject to distribution by Coe "as Liquidating Trustee for the Peace Foundation, formed in 1957." Although we agree with Coe's contention that the district court erred in quieting title to the realty in question in the name of the Foundation 1969, we disagree that the property held by the dissolved corporation reverted on its dissolution to him and the estate of his deceased wife, or that it is subject to distribution by him.

The statutes pertaining to New Mexico corporations in existence in 1969, the year the Foundation 1957 was dissolved, are barren of specific guidelines indicating the method or means controlling the distribution of the assets of a nonprofit corporation which has been involuntarily dissolved. In 1975 the legislature, by 1975 New Mexico Laws, Chapter 217, adopted the Nonprofit Corporation Act, which became effective July 1, 1976. NMSA 1953, Section 51–14–90 (Repl.Vol. 8, Pt. 1 (Pocket Supp.1975)) (now compiled as NMSA 1978, § 53–8–48 (Repl.Pamp.1983)), sets forth the mechanism for the distribution of the assets of a dissolved nonprofit corporation during the time in question. Subsection D of Section 53–8–48 directs that assets of the corporation which are not otherwise restricted by law as to their distribution "shall be distributed in accordance with the provisions of the articles of incorporation or the bylaws [of the corporation]." *Id.*

In the absence of a statute specifying the method of distribution of the assets of a dissolved corporation, " 'the articles of incorporation of the corporation control and are its fundamental and organic law.' " *Lurie v. Arizona Fertilizer & Chem. Co.,* 101 Ariz. 482, 421 P.2d 330, 333 (1966) (quoting *Trico Elec. Coop., Inc. v. Ralston,* 67 Ariz. 358, 196 P.2d 470, 475 (1948)) (unless statute directs manner of distribution of its assets on dissolution, corporate charter is an index to the objects for which it was created and powers to which it has been endowed). *See also Waggoner v. Laster,* 581 A.2d 1127 (Del.1990) (courts must give effect to intent of parties as revealed by language of certificate of incorporation and circumstances surrounding its creation and adoption); *In re Olympic Nat'l Agencies, Inc.,* 74 Wash.2d 1, 442 P.2d 246 (1968) (articles of incorporation govern the rights of parties, except as otherwise dictated by statute). Thus, Section 53–8–48 constitutes explicit legislative direction as to the manner by which the assets of a dissolved corporation are to be distributed and statutorily recognizes the rule that assets of a dissolved corporation, where not otherwise restricted by law, are to be distributed in the manner specified by the corporate bylaws or articles of incorporation. Thus, we determine that the articles of incorporation of the Foundation 1957 provide the framework for the distribution of the corporate assets held in the corporation's name at the time of its involuntary dissolution. *See Lurie v. Arizona Fertilizer & Chem. Co.; Waggoner v. Laster; In re Olympic Nat'l Agencies, Inc.*

Article VIII of the Articles of Incorporation of the Foundation 1957 provided:

In the event, for any reason whatsoever, it should ever be found necessary to suspend further operation of this corporation, and to abandon the objectives for which it was founded, thereon, after the discharge of all lawful indebitness [sic] and obligations, the remaining assets of every kind and description shall be conveyed by this corporation, Acting [sic] through its proper officers, to such educational, scientific, religious or charitable institution or institutions, organizations [sic] or organizations, association or associations, as the board of trustees shall deem to be most nearly carrying on and accomplishing the objectives for which this corporation was organized and existed.

■ The district court adopted findings determining that Coe breached his duty as a corporate officer of the Foundation 1957 by failing to file required corporate reports and annual fees. The court also found, among other things, that Coe "knowingly used the Peace Foundation for his own purposes" and "personally received over $200,000 in distributions from the Peace Foundation, over $84,000 of which was knowingly and wrongfully taken by [him] for a nonexistent loan" which "has never [been] repaid." Similarly, the court found that Coe "took substantial amounts of money from the Peace Foundation and converted such funds to his own use, and by so doing, breached his trust as an officer and director of the Peace Foundation. [Those] funds have not been returned to the Peace Foundation * * *." Based upon these and other findings, the court concluded that Coe is "estoped [sic] from asserting a claim as liquidating trustee, to the Peace Foundation property." The court's findings and its conclusions determining that because of Coe's improper conduct and breach of fiduciary trust he is estopped from acting as liquidating trustee or asserting a claim to the property of the Peace Foundation are supported by substantial evidence in the record. *Sheraden v. Black*, 107 N.M. 76, 752 P.2d 791 (Ct.App.1988) (findings supported by substantial evidence are liberally interpreted in support of the judgment); *H.T. Coker Constr. Co. v. Whitfield*

*Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App.1974) (findings are liberally construed and are deemed sufficient if a fair consideration of them, taken together, justifies the court's judgment). *See also Moss Theatres, Inc. v. Turner*, 94 N.M. 742, 616 P.2d 1127 (Ct.App.1980) (a party may, based upon his or her own conduct, be estopped from asserting a right otherwise conferred by law); *Lenning v. New Mexico State Bd. of Educ.*, 82 N.M. 608, 485 P.2d 364 (Ct.App.1971) (equitable estoppel is grounded in the maximum that a party should not profit by his or her own wrongdoing).

■ The relief requested by the Toneys, and which has yet to be ruled upon by the district court, sought, among other things, to have the court remove the officers of the dissolved corporation and replace them with court-appointed officers or trustees. Although Article VIII specifies that the distribution of the corporate assets shall be performed by the officers of the Foundation 1957, where there are no available officers to carry out this duty or where an officer has been disqualified or estopped from performing such responsibility, the district court, upon application of an interested party, is invested with the authority to protect and preserve the corporate assets, to appoint a receiver to take charge of and administer the assets of a dissolved corporation and to oversee the disposition of such assets in accordance with the articles of incorporation. *See* SCRA 1986, 1–066. *See also* Restatement (Second) of Trusts § 399 cmt. o, at 306 (1959) ("If gifts are made to a charitable corporation which is subsequently dissolved, the doctrine of cy pres will be applied, and the court may direct that the property be given to another corporation or association having similar purposes * * *."). *See generally* 19 C.J.S. *Corporations* § 866 (1990). *Cf.* NMSA 1978, § 53–8–56(C)(3) (Repl.Pamp.1983) (directing that the assets of a corporation subject to "liquidation, shall be transferred or conveyed to one or more * * * corporations, societies or organizations engaged in activities substantially similar to those of the dissolving or

liquidating corporation as the court may direct.").

Our determination that the Foundation 1969 did not obtain title to the assets of the Foundation 1957, and that the district court erred in quieting title in the Foundation 1969 to such assets, does not, however, affect the title of the Foundation 1969 to those assets received by it under the provisions of the testamentary trust created by Wilhelmina's will.

## III. CONCLUSION

The judgment of the district court upholding the validity of the last will and testament and the testamentary trust of Wilhelmina Coe is affirmed. We also affirm the judgment of the district court: (1) denying Coe's individual claims of ownership to the property of the Foundation 1957 and 1969; (2) quieting title to the real property held in the name of the testamentary trust; and (3) the judgment of the district court dismissing each of Coe's claims raised in the proceedings below, except as to his rights as a life beneficiary of the testamentary trust of the estate of Wilhelmina Coe, and except as to that portion of the judgment which ordered that title to the assets of the Foundation 1957 be quieted in the name of the Foundation 1969. In all other respects the judgment entered below is affirmed. Each of the parties shall bear their own costs on appeal.

IT IS SO ORDERED.

ALARID, C.J., and FLORES, J., concur.